# EXHIBIT A

Michael R. DiChiara (NJ ID # 010021998)
Krakower DiChiara LLC
77 Market Street, Suite 2
Park Ridge, NJ 07656
Telephone: 201-746-0303
Fax: 866-417-2333

*Attorneys for Plaintiff*

-------------------------------------------------------x

ROBERT NETHING,

                                Plaintiff,           SUPERIOR COURT OF NEW JERSEY
                                            LAW DIVISION: UNION COUNTY

     -against-

MERCK & CO., INC. AND NTT DATA, INC.,   COMPLAINT

                         Defendants.      July Trial Demanded

-------------------------------------------------------x

       Plaintiff ROBERT NETHING, by and through his attorneys, upon personal knowledge as to himself and upon information and belief as to other matters, brings this Complaint against Defendant MERCK & CO., INC. ("Merck") and Defendant NTT DATA, INC. ("NTT"), and alleges as follows:

## INTRODUCTION

       1.     Plaintiff brings this lawsuit seeking recovery against Defendants for violations of the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a *et seq.*; the New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. § 34:11-4.1; and for violations of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -49 ("NJLAD").

       2.     Plaintiff further brings this lawsuit seeking recovery for breach of contract by

1

Defendant NTT pursuant to New Jersey state law.

3.    Plaintiff seeks economic, compensatory, liquidated damages, attorneys' fees, punitive damages, and other appropriate legal and equitable relief pursuant to state law.

## PARTIES

**Defendant Merck & Co., Inc.**

4.    All actions and omissions described in this Complaint were made by Defendant Merck directly and/or through Defendant Merck's supervisory employees and agents.

5.    Defendant Merck's actions and omissions described in this Complaint and causing injury to Plaintiff were done knowingly and willfully.

6.    Defendant Merck is a domestic profit corporation organized under the laws of New Jersey and doing business in the State of New Jersey, and within Union County, as a healthcare company.

7.    Defendant Merck maintains a principle business address, a main business address, and executive offices at 2000 Galloping Hill Road, Kenilworth, New Jersey, in Union County.

8.    At all times relevant to this Complaint Defendant Merck was and is an employer within the meaning of the NJWHL, N.J.S.A. 34:11-56a1(g), and employed employees, including Plaintiff.

9.    At all times relevant to this Complaint, Defendant Merck has been and is an employer as that term is defined by NJLAD, N.J.S.A. 10:5-5(e).

**Defendant NTT Data, Inc.**

10.    All actions and omissions described in this Complaint were made by Defendant NTT directly and/or through Defendant NTT's supervisory employees and agents.

2

11.    Defendant NTT's actions and omissions described in this Complaint and causing injury to Plaintiff were done knowingly and willfully.

12.    Defendant NTT is a foreign profit corporation organized under the laws of Massachusetts and doing business in the State of New Jersey, and within Middlesex County.

13.    Defendant NTT maintains a principle business address, a main business address, and executive offices at 100 City Square, Boston, MA 02129.

14.    Defendant NTT maintains a business within New Jersey at: 90 Woodbridge Ctr Drive, Suite 410, Woodbridge, NJ 07095.

15.    At all times relevant to this Complaint Defendant NTT was and is an employer within the meaning of the NJWHL, N.J.S.A. 34:11-56a1(g), and employed employees, including Plaintiff.

16.    At all times relevant to this Complaint, Defendant NTT has been and is an employer as that term is defined by NJLAD, N.J.S.A. 10:5-5(e).

**Defendants' Status as Joint Employers**

17.    At all times relevant to this Complaint, Defendant Merck and Defendant NTT were joint employers, and these Defendants jointly employed Plaintiff.

18.    At all times relevant to this Complaint, the Defendant Merck exercised immediate control over the promulgation of work rules and conditions of employment that Plaintiff was subjected to, including rules and conditions related to the hiring, firing, and disciplining of Plaintiff, the issuance of work assignments and instructions, and the supervision of Plaintiff's day-to-day activities.

19.    At all times relevant to this Complaint, the Defendant NTT exercised immediate

3

control over the promulgation of work rules and conditions of employment that Plaintiff was subjected to, including rules and conditions related to the hiring, firing, and disciplining of Plaintiff, the issuance of work assignments and instructions, and the supervision of Plaintiff's day-to-day activities.

20.    At all times relevant to this Complaint, the Defendants exercised common control over supervision of Plaintiff.

**Plaintiff Robert Nething**

21.    Plaintiff is an adult resident of Hackettstown, New Jersey, in Warren County.

22.    Plaintiff is sixty-one (61) years of age.

## FACTUAL ALLEGATIONS

23.    Defendants employed Plaintiff from 2006 until March 31, 2017 when he was unlawfully terminated.

24.    At all times relevant to this Complaint, Plaintiff was an employee of Defendants.

25.    At all times relevant to this Complaint Plaintiff performed his duties fully, effectively, faithfully, and efficiently.

26.    At all times relevant to this Complaint met or exceeded all reasonable business expectations as an employee within Defendants' workforce.

**Wage & Hour Violations**

27.    At all times relevant to this Complaint. Plaintiff was compensated on an hourly basis.

28.    At all times relevant to this Complaint, Defendants regularly required Plaintiff to work in excess of forty (40) hours per week.

4

29.     During Plaintiff's employment with Defendants, Plaintiff was required to work hours "off the clock" and was required to work hours in excess of forty (40) in a workweek without receiving wages for those hours as required by law.

30.     Defendants had actual and/or constructive knowledge that Plaintiff was working unpaid hours.

31.     In fact, Defendants directed Plaintiff to record only forty (40) hours on his timesheets regardless if he worked significantly more than forty (40) hours in a week.

32.     Throughout Plaintiff's employment, Defendants failed to pay Plaintiff for all hours worked in violation of the NJWHL and NJWPL.

**Breach of Contract**

33.     Plaintiff and Defendant NTT entered into a written contract whereby Defendant NTT would compensate Plaintiff at a rate of $85.50 per hour worked.

34.     Defendant NTT failed to compensate Plaintiff for all hours worked.

35.     By failing to compensate Plaintiff for all hours worked, Defendant NTT breached the contract.

**Age Discrimination**

36.     Despite Plaintiff's longevity and excellent work history, Defendants summarily terminated Plaintiff because of his age.

37.     Though Defendants purportedly considered Plaintiff an independent contractor of Defendant Merck, Defendant Merck and Defendant NTT actually jointly employed Plaintiff.

38.     Plaintiff worked for Defendants pursuant to a series of purported independent contractor agreements for more than 10 years beginning in 2006.

5

39.     In October 2016, Plaintiff applied for the full-time position of Senior Specialist, Technical Analyst -- a job that he had been performing for Defendants for a number of years and for which he was eminently qualified.

40.     Plaintiff advised his supervisor, Maryellen Walter ("Walter"), that he had applied for the position and Walter responded, via email, "Happy to see this email!"

41.     Despite being qualified for the analyst position, Defendants hired a younger, less experienced person for the job.

42.     Incredibly, Defendants asked Plaintiff to train the person who was hired in his stead.

43.     Shortly thereafter, Defendants unlawfully and summarily terminated Plaintiff.

44.     Thus, after approximately eleven years of dedicated service, Defendants unlawfully terminated Plaintiff's employment.

45.     Moreover, the age discrimination to which Plaintiff was subjected was not limited to his termination.

46.     Plaintiff was also subjected to numerous discriminatory comments from management, such as "why don't you just retire?" and "you're sick a lot."

47.     Such comments are more evidence of the Defendants' discriminatory animus towards Plaintiff.

### FIRST CLAIM FOR RELIEF
#### Violations of the NJWPL and NJWHL- Unpaid Wages
#### (Against All Defendants)

48.     Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

49.     During the statute of limitations period covered by these claims, Plaintiff worked hours for which he was not paid.

50.     At all relevant times, Defendants has operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines, and rules of willfully failing and refusing to pay Plaintiff the regular hourly rate for work done in his employment.

51.     Defendants' failure to comply with the NJWPL and NJWHL caused Plaintiff to suffer loss of wages and interest thereon.

52.     Due to Defendants' violations of NJWHL, Plaintiff is entitled to recover from Defendants lost wages, including front pay and back pay, unpaid wages and interest owed on unpaid wages held by Defendants over an extended period of time, as well as reasonable attorneys' fees and costs.

## COUNT TWO
## BREACH OF CONTRACT
### (Against Defendant NTT)

53.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

54.     A valid contract exists between Plaintiff and Defendant NTT.

55.     Plaintiff and Defendant NTT entered into a Contract whereby Defendant NTT would compensate Plaintiff at a rate of $85.50 for all hours worked.

56.     Plaintiff fully performed his duties and obligations under the contract.

57.     Defendant NTT breached the contract by failing to compensate Plaintiff at a rate of $85.50 for all hours worked.

7

58.     As a result of Defendant NTI's breach of the contract, Plaintiff has suffered monetary damages in an amount to be determined at trial.

## COUNT FOUR
## AGE DISCRIMINATION IN VIOLATION OF THE NJLAD
### (Against All Defendants)

59.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

60.     At all times relevant to this Complaint Defendants were, and continue to be, employers within the meaning of the NJLAD, N.J.S.A. § 10:5-5(e) and employed employees, including Plaintiff.

61.     The NJLAD makes it unlawful to discriminate against any individual on the basis of age.

62.     Plaintiff is sixty-one (61) years old.

63.     Plaintiff was subjected to harassment and discrimination based on his age.

64.     The harassment was sufficiently severe or pervasive to materially alter the terms and conditions of Plaintiff's employment and to create a discriminatorily abusive working environment.

65.     At all times relevant to this Complaint, Defendants' discrimination against Plaintiff based on his age substantially and materially altered Plaintiff's conditions of employment in ways that were adverse to Plaintiff.

66.     Defendants discriminated against Plaintiff because of his by subjecting Plaintiff to harassment, humiliating Plaintiff, requiring Plaintiff to train his younger replacement, and, ultimately, summarily discharging Plaintiff from his employment.

8

67. Defendants were aware of, or should have been aware of, and are directly and vicariously responsible for, such hostile work environment.

68. Defendants engaged in unlawful employment practices and unlawful discriminatory as those terms are defined by the NJLAD, N.J.S.A. 10:5-12.

69. These acts violate NJLAD and are illegal.

70. In taking the above-described discriminatory actions, Defendants acted with malice and reckless indifference to Plaintiff's rights pursuant to NJLAD giving rise to punitive damages.

71. As a direct and proximate result of Defendants' aforementioned discriminatory conduct, Plaintiff suffered monetary damages, as well as humiliation, emotional distress, mental anguish and suffering, and damage to his professional reputation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief on all Claims for Relief:

A. Damages in an amount to be determined at trial

B. All compensatory and economic damages;

C. All reasonable expenses incurred by Plaintiff, including court costs and reasonable and necessary attorney fees, including attorney's fees as provided by statutes, and other relief, both in law and equity, to which Plaintiff may show herself justly entitled;

D. Liquidated damages.

E. All punitive and statutory damages authorized by law;

F. Pre-judgment and post-judgment interest; and

G. Such further relief as the Court finds just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which he has a right.

## CERTIFICATION PURSUANT TO R. 4:5-1

I certify that the matter in controversy is not subject of any other action pending in any Court or of pending arbitration proceeding presently known to the parties and no other action or arbitration is presently contemplated.

## DESIGNATION OF TRIAL COUNSEL

Plaintiff hereby designates Michael DiChiara. Esq.. as trial counsel in this matter.

KRAKOWER DICHIARA LLC
Attorneys for Plaintiff

By: _____
Michael DiChaira

Dated: October 3, 2017

10

## CERTIFICATION REGARDING FILING

The undersigned hereby certifies that the original and one copy of the within complaint and Jury Demand was filed with the Clerk of the Superior Court, Union County Court House.

KRAKOWER DiCHIARA LLC
Attorneys for Plaintiff

By: _____
Micahel DiChiara

Dated: 11-7-17

11

# Civil Case Information Statement

**Case Details: UNION | Civil Part Docket# L-003524-17**

**Case Caption:** NETHING ROBERT  VS MERCK & CO.

**Case Initiation Date:** 10/03/2017

**Attorney Name:** MICHAEL R DI CHIARA

**Firm Name:** KRAKOWER DI CHIARA LLC

**Address:** ONE DEPOT SQUARE 77 MARKET ST STE 2

PARK RIDGE NJ 07656

**Phone:**

**Name of Party:** PLAINTIFF : Nething, Robert

**Name of Defendant's Primary Insurance Company**

(if known): Unknown

**Case Type:** INVERSE CONDEMNATION

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Hurricane Sandy related?** NO

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same**

**transaction or occurrence)?** NO

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Employer/Employee

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual**
**management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO

**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO

**If yes, for what language:**

I certify that confidential personal identifiers have been redacted from documents now submitted to the
court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

10/03/2017                                                                                          /s/ MICHAEL R DI CHIARA

Dated                                                                                                  Signed

**SUPERIOR COURT OF NEW JERSEY - eCOURTS**

The following was filed by Case Management on 10/04/2017 at 5:04 AM:

| | |
|---|---|
| Plaintiff Name: | ROBERT NETHING |
| Defendant Name: | MERCK & CO., NTT DATA INC. |
| Case Caption: | NETHING ROBERT VS MERCK & CO. |
| Case Number: | UNN L 003524-17 |
| Docket Text: | TRACK ASSIGNMENT Notice submitted by Case Management |
| Transaction ID: | LCV2017281990 |

**Notice has been electronically mailed to:**
Plaintiff Attorney  ROBERT NETHING          MD@KDLAWLLC.COM

**Notice was not electronically mailed to:**
Defendant Attorney For            MERCK & CO.              NJ 00000
Defendant Attorney For            NTT DATA INC.            NJ 00000

Login to eCourts to view the case jacket. You will need a valid user ID(Bar ID) to view the submitted documents.

For questions, please contact the Superior Court of New Jersey - Civil Part.

This communication is for notification purposes only.

This email was sent from a notification-only address that cannot accept incoming mail. Please do not reply to this message.

| | | SUPERIOR COURT OF NEW JERSEY |
|---|---|---|

**Plaintiff**
ROBERT NETHING

vs

**Defendant**
MERCK & CO., INC., ET AL.

**SUPERIOR COURT OF NEW JERSEY**
**LAW DIVISION:**
**UNION COUNTY**

**DOCKET NO. UNN-L-3524-17**

**AFFIDAVIT OF SERVICE**
(for use by Private Service)

Cost of Service pursuant to R4:4-30

$ _____

**Person to be served:** MERCK & CO., INC.

**Address:**
2000 GALLOPING HILL ROAD
KENILWORTH NJ 07033

**Attorney:**
DICHIARA LAW FIRM LLC
77 MARKET STREET SUITE 2
PARK RIDGE NJ 07042

**Papers Served:**
SUMMONS & COMPLAINT TRACK ASSIGNMENT NOTICE
CASE INFORMATION STATEMENT

**Service Data:**

Served Successfully ✓   Not Served _____   Date: _10/30/17_   Time: _3:30 pm_   Attempts: _____

_____ Delivered a copy to him/her personally

_____ Left a copy with a competent household
member over 14 years of age residing therein at place of abode.

✓ Left a copy with a person authorized to accept
service, e.g. managing agent, registered agent, etc.

Name of Person Served and relationship/title

_Alice Corkley_

MANAGING AGENT

**Description of Person Accepting Service:**

Age: _50_   Height: _5'0"_   Weight: _120_   Hair: _Grey_   Sex: _Female_   Race: _White_

**Non-Served:**

( ) Defendant is unknown at the address furnished by the attorney
( ) All reasonable inquiries suggest defendant moved to an undetermined address
( ) No such street in municipality
( ) No response on: _____ Date _____ Time _____
_____ Date _____ Time _____
_____ Date _____ Time _____
( ) Other: _____   Comments or Remarks: Ph# _908-740-3801_

Subscribed and Sworn to me this _2017_
___ day of _Nov, 2017_

_Angela Ilaria_
Notary Signature
ANGELA ILARIA
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires 4/14/2021

I, SAMAR CALDWELL                    , was at
time of service a competent adult not having a direct
interest in the litigation. I declare under penalty
of perjury that the foregoing is true and correct.

_____   _11-1-17_
Signature of Process Server   Date

**DGR - THE SOURCE FOR LEGAL SUPPORT**
1359 Littleton Road, Morris Plains, NJ 07950-3000
(973) 403-1700  Fax (973) 403-9222

**Work Order No.   355394**

**File No.   UNN-L-3524-17**

Anne B. Sekel, Esq. (N.J. Bar No. 038842005)
FOLEY & LARDNER LLP
90 Park Avenue
New York, NY 10016
Tel: (212) 682-7474
Fax: (212) 687-2329

*Attorneys for Defendant NTT DATA, Inc.*

---------------------------------------------------------- X

|  |  |
|---|---|
| ROBERT NETHING, | **SUPERIOR COURT OF NEW JERSEY** |
| Plaintiff, | **LAW DIVISION UNION COUNTY** |
| -against- | DOCKET NO.: UNN-L-003524-17 |
| MERCK & CO., INC. AND NTT DATA, INC., | CIVIL ACTION |
| Defendants. | **NOTICE OF MOTION ON CONSENT** |

---------------------------------------------------------- X

TO: ALL COUNSEL OF RECORD

**PLEASE TAKE NOTICE** that, upon the annexed affidavits of Anne B. Sekel and

Donald Schroeder, and the accompanying exhibits, and with ***Plaintiff Robert Nething's consent***,

Defendant NTT Data, Inc. will move before the Honorable Alan G. Lesnewich, Superior Court

of New Jersey, Union County, located at 2 Broad St., Elizabeth, New Jersey 07201, on March 2,

2018, at 9:30 a.m., or as soon thereafter as counsel may be heard, for an Order admitting Donald

Schroeder to appear *pro hac vice*, to represent Defendant NTT Data, Inc. in this action.

4824-5004-6301.1

Dated:  New York, New York
        February 12, 2018

                       Respectfully submitted,

                       FOLEY & LARDNER, LLP

By: _____
                       Anne B. Sekel (N.J. Bar No. 038842005)
                       Foley & Lardner LLP
                       90 Park Avenue
                       New York, NY  10016
                       Tel.: 212-682-7474
                       asekel@foley.com

                       *Attorneys for Defendant NTT DATA, Inc.*

Anne B. Sekel, Esq. (N.J. Bar No. 038842005)
FOLEY & LARDNER LLP
90 Park Avenue
New York, NY 10016
Tel: (212) 682-7474
Fax: (212) 687-2329

*Attorneys for Defendant NTT DATA, Inc.*

```
------------------------------------------------ X
                                                 :
ROBERT NETHING,                                  :
                                                 :
              Plaintiff,                          :
                                                 :
       -against-                                  :
                                                 :
MERCK & CO., INC. AND NTT DATA, INC.,            :
                                                 :
              Defendants.                         :
                                                 :
------------------------------------------------ X
```

**SUPERIOR COURT OF
NEW JERSEY**

**LAW DIVISION
UNION COUNTY**

DOCKET NO.: UNN-L-003524-17

CIVIL ACTION

**AFFIDAVIT OF ANNE B. SEKEL**

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

      ANNE B. SEKEL, being first duly sworn deposes and states as follows:

      1.     I am a partner with the law firm of Foley & Lardner, LLP, counsel for

Defendant NTT Data, Inc. (Defendant) in this action. I am a member in good standing of the Bar

of the State of New York, and the Bar of the State of New Jersey and I submit this affidavit in

support of Defendant's motion to admit Donald Schroeder, Esq. *pro hac vice* to represent

Defendant in this action. Mr. Schroeder is associated in this matter with me. I am a new Jersey

counsel of record qualified to practice pursuant to R. 1:21-1.

2.      I know of no reason why Mr. Schroeder should not be admitted *pro hac vice*. No prior application has been submitted to the Court.

3.      Mr. Schroeder is a member in good standing of the Bar of the Commonwealth of Massachusetts. No disciplinary proceedings are pending against Mr. Schroeder in any jurisdiction and no discipline has previously been imposed on Mr. Schroeder in any jurisdiction.

4.      Mr. Schroeder is a partner in the law firm Foley & Lardner LLP, and he practices in the firm's offices at 111 Huntington Avenue, Suite 2500, Boston, Massachusetts 02199-7610.

5.      Mr. Schroeder of Foley & Lardner LLP has been retained by NTT Data, Inc. as counsel for the past ten years and has asked that Foley & Lardner LLP continue to represent them in this action, and Defendant requests that Mr. Schroeder be admitted *pro hac vice* so that he may represent Defendant for all purposes before this Court.

WHEREFORE, I respectfully request that the Court grant Defendant's motion for an Order admitting Donald Schroeder, Esq. to represent Defendant as counsel in this action.

_____
ANNE B. SEKEL

Sworn to and subscribed before me this
12th day of February, 2018.

_____
Notary Public

RACHEL E. KRAMER
Notary Public, State of New York
No. 02KR6148353
Qualified in Kings County
My Commission Expires 8/2/18

4832-5641-1483.3

Anne B. Sekel, Esq. (N.J. Bar No. 038842005)
FOLEY & LARDNER LLP
90 Park Avenue
New York, NY 10016
Tel: (212) 682-7474
Fax: (212) 687-2329

*Attorneys for Defendant NTT DATA, Inc.*

```
----------------------------------------------------- X
                                                      :
ROBERT NETHING,                                       :
                                                      :
                Plaintiff,                            :
                                                      :
        -against-                                     :
                                                      :
MERCK & CO., INC. AND NTT DATA, INC.,                 :
                                                      :
                Defendants.                           :
                                                      :
----------------------------------------------------- X
```

**SUPERIOR COURT OF
NEW JERSEY**

**LAW DIVISION
UNION COUNTY**

DOCKET NO.: UNN-L-003524-17

CIVIL ACTION

**AFFIDAVIT OF DONALD
SCHROEDER**

COMMONWEALTH OF MASSACHUSETTS    )
                                 ) ss.:
COUNTY OF SUFFOLK                )

DONALD SCHROEDER, being first duly sworn deposes and states as follows:

1.    I am a partner at the law firm of Foley & Lardner, LLP, counsel for

Defendant NTT DATA, Inc. ("Defendant") in this action.  I am a member in good standing of

the Bar of the Commonwealth of Massachusetts[1], and I submit this affidavit in support of

Defendant's motion to admit me *pro hac vice* to represent Defendant in this action.

2.    I practice at the firm's offices at 111 Huntington Avenue, Suite 2500,

Boston, Massachusetts 02199-7610.

---

[1] A Certificate of Good Standing issued from the Commonwealth of Massachusetts is attached hereto as Exhibit A.

3.     I am associated in the above-captioned matter with Anne B. Sekel, a New Jersey counsel of record qualified to practice pursuant to R. 1:21-1.

4.     Defendant has requested that I represent them in the above-captioned action.

5.     No disciplinary proceedings are pending against me in any jurisdiction and no discipline has previously been imposed on me in any jurisdiction.

6.     I have been retained by Defendant as counsel for ten years and Defendant has requested that I continue to represent them in this action. Therefore I request that I be admitted *pro hac vice* so that I may represent Defendant for all purposes before this Court.

WHEREFORE, I respectfully request that the Court grant Defendant's motion for an Order admitting me, Donald Schroeder, Esq. to represent Defendant as counsel in this action.

_____
DONALD SCHROEDER

Sworn to and subscribed before me this
12th day of February, 2018

_____
Notary Public

Anne B. Sekel, Esq. (N.J. Bar No. 038842005)
FOLEY & LARDNER LLP
90 Park Avenue
New York, NY 10016
Tel: (212) 682-7474
Fax: (212) 687-2329

*Attorneys for Defendant NTT DATA, Inc.*

-------------------------------------------------------X
                              :

ROBERT NETHING,

          Plaintiff,

   -against-

MERCK & CO., INC. AND NTT DATA, INC.,

       Defendants.

-------------------------------------------------------X

**SUPERIOR COURT OF
NEW JERSEY**

**LAW DIVISION
UNION COUNTY**

DOCKET NO.: UNN-L-003524-17

CIVIL ACTION

**[PROPOSED] ORDER ADMITTING
ATTORNEY PRO HAC VICE**

      This matter being opened to the court by Anne B. Sekel, a New Jersey attorney and the

attorney of record for Defendant NTT Data, Inc. ("Defendant") to permit Donald Schroeder, an

attorney admitted to practice law in the Commonwealth of Massachusetts, to participate with

other counsel for Defendant in all phases of the trial, and it appearing that Mr. Schroeder is a

licensed attorney in good standing in the Commonwealth of Massachusetts and it appearing that

there has been an attorney/client relationship between Defendant and Mr. Schroeder for an

extended period of time, and this motion having been unopposed and on consent.

      It is on this ___ day of March, 2018 ORDERED that Donald Schroeder be and hereby is

admitted *pro hac vice* and is authorized to appear and participate with other counsel for

Defendant in all phases of trial, subject to the following conditions:

1.      Mr. Schroeder shall abide by the *New Jersey Court Rules* including all disciplinary rules, *R.* 1.20-1 and *R.* 1.28-2.

2.      Mr. Schroeder shall, and hereby does, consent to the appointment of the Clerk of the Supreme Court as his/her agent upon whom service of process may be made for all actions against Defendant that may arise out of his/her participation in the matter.

3.      Mr. Schroeder shall immediately notify the court of any matter affecting his standing at the Bar of any other jurisdiction.

4.      Mr. Schroeder shall have all pleadings, briefs, and other papers filed with the court signed by an attorney of record authorized to practice in New Jersey, who shall be held responsible for them, the conduct of the litigation and the attorney admitted herein.

5.      Mr. Schroeder cannot be designated as trial counsel.

6.      No discovery, motion, trial or any other proceedings delay shall occur or be requested by reason of the inability of Mr. Schroeder to be in attendance.

7.      Mr. Schroeder must, within ten (10) days, pay the fees required by *R.* 1:20-1(b) and *R.* 1:28-2 and submit an affidavit of compliance.

8.      *Pro hac vice* admission will automatically terminate for failure to make the initial and any annual payment required by *R.* 1:20-1(b) and *R.* 1:28-2.

9.      Non-compliance with any of the terms of this order shall constitute grounds for removal.

10.     A copy of this order shall be served on all parties within seven (7) days of the date hereof.

_____
                                                            J.S.C.

2

# COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.

———

BE IT REMEMBERED, that at the Supreme Judicial Court holden at Boston within and for said County of Suffolk, on the **twenty-first** day of **June** A.D. **2000** , said Court being the highest Court of Record in said Commonwealth:

## Donald William Schroeder

being found duly qualified in that behalf, and having taken and subscribed the oaths required by law, was admitted to practice as an Attorney, and, by virtue thereof, as a Counsellor at Law, in any of the Courts of the said Commonwealth: that said Attorney is at present a member of the Bar, and is in good standing according to the records of this Court*.

In testimony whereof, I have hereunto set my hand and affixed the seal of said Court, this **ninth** day of **February** in the year of our Lord **two thousand and eighteen..**

MAURA S. DOYLE, Clerk

\* Records of private discipline, if any, such as a private reprimand imposed by the Board of Bar Overseers or by any court, are not covered by this certification.
X3116

Anne B. Sekel, Esq. (N.J. Bar No. 038842005)
FOLEY & LARDNER LLP
90 Park Avenue
New York, NY 10016
Tel: (212) 682-7474
Fax: (212) 687-2329

*Attorneys for Defendant NTT DATA, Inc.*

```
------------------------------------------------------X
```
                                                  :    **SUPERIOR COURT OF**
                                                  :    **NEW JERSEY**
ROBERT NETHING,                                   :    **LAW DIVISION:UNION COUNTY**
                                                  :
            Plaintiff,                            :    DOCKET NO.: UNN-L-003524-17
                                                  :
   -against-                                      :    CIVIL ACTION
                                                  :
                                                  :
MERCK & CO., INC. AND NTT DATA, INC.,             :    [PROPOSED] ORDER ~~GRANTING~~
                                                  :    **DENYING MOTION TO DISMISS**
            Defendants.                           :    **OR, IN THE ALTERNATIVE, TO**
                                                  :    **COMPEL ARBITRATION**
                                                  :
                                                  :
```
------------------------------------------------------X
```

            The matter being brought before the Court on motion of the above named attorneys

returnable February 12, 2018 for an order pursuant to New Jersey Rule of Court 4:6-2(e), granting

the Motion to Dismiss or, in the alternative, to Compel Arbitration, and this Motion having been

opposed XXXX ~~unopposed~~, and good cause appearing, it is on this 16th day of February,

2018 ORDERED that:

1.      ~~The Complaint in the above-captioned action is hereby dismissed entirely~~ DENIED
without prejudice; Counsel for the plaintiff may amend their complaint in 10 days (by
2/26/2018); and

2.      With regard to the request to compel arbitration and the application of New York law, the
parties may engage in discovery as to the arbitration agreement and choice of law issues raised in
this motion.  This discovery should be undertaken and completed in the next 60 days.  Counsel
for defendant may then renew this application; and

3. It is further ordered that this Order is deemed served upon upload to eCourts.

*/s/ **Karen M. Cassidy***
A.J.S.C.

**Oral argument and reasons on the record 2/16/2018**

2

Michael R. DiChiara (NJ ID # 010021998)
Krakower DiChiara LLC
77 Market Street, Suite 2
Park Ridge, NJ 07656
Telephone: 201-746-0303
Fax: 866-417-2333

*Attorneys for Plaintiff*

---------------------------------------------------------x

ROBERT NETHING,

                     Plaintiff,

          -against-

MERCK & CO., INC., NTT DATA, INC., and
MISICOM, INC.

                    Defendants.

---------------------------------------------------------x

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: UNION COUNTY

First Amended Complaint

UNN-L-03524-17

 

Plaintiff ROBERT NETHING, by and through his attorneys, upon personal knowledge as to himself and upon information and belief as to other matters, brings this Complaint against Defendant MERCK & CO., INC. ("Merck"), Defendant NTT DATA, INC. ("NTT"), and Defendant Misicom, Inc. ("Misicom") and alleges as follows:

## INTRODUCTION

1.      Plaintiff brings this lawsuit seeking recovery against Defendants for violations of the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a *et seq.*; the New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. § 34:11-4.1; and for violations of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -49 ("NJLAD").

2.      Plaintiff seeks economic, compensatory, liquidated damages, attorneys' fees,

punitive damages, and other appropriate legal and equitable relief pursuant to state law.

## PARTIES

### Defendant Merck & Co., Inc.

3.　　All actions and omissions described in this Complaint were made by Defendant Merck directly and/or through Defendant Merck's supervisory employees and agents.

4.　　Defendant Merck's actions and omissions described in this Complaint and causing injury to Plaintiff were done knowingly and willfully.

5.　　Defendant Merck is a domestic profit corporation organized under the laws of New Jersey and doing business in the State of New Jersey, and within Union County, as a healthcare company.

6.　　Defendant Merck maintains a principle business address, a main business address, and executive offices at 2000 Galloping Hill Road, Kenilworth, New Jersey, in Union County.

7.　　At all times relevant to this Complaint Defendant Merck was and is an employer within the meaning of the NJWHL, N.J.S.A. 34:11-56a1(g), and employed employees, including Plaintiff.

8.　　At all times relevant to this Complaint, Defendant Merck has been and is an employer as that term is defined by NJLAD, N.J.S.A. 10:5-5(e).

### Defendant NTT Data, Inc.

9.　　All actions and omissions described in this Complaint were made by Defendant NTT directly and/or through Defendant NTT's supervisory employees and agents.

10.　　Defendant NTT's actions and omissions described in this Complaint and causing injury to Plaintiff were done knowingly and willfully.

2

11.     Defendant NTT is a foreign profit corporation organized under the laws of Massachusetts and doing business in the State of New Jersey, and within Middlesex County.

12.     Defendant NTT maintains a principle business address, a main business address, and executive offices at 100 City Square, Boston, MA 02129.

13.     Defendant NTT maintains a business within New Jersey at: 90 Woodbridge Ctr Drive, Suite 410, Woodbridge, NJ 07095.

14.     At all times relevant to this Complaint Defendant NTT was and is an employer within the meaning of the NJWHL, N.J.S.A. 34:11-56a1(g), and employed employees, including Plaintiff.

15.     At all times relevant to this Complaint, Defendant NTT has been and is an employer as that term is defined by NJLAD, N.J.S.A. 10:5-5(e).

**Defendant Misicom**

16.     All actions and omissions described in this Complaint were made by Defendant Misicom directly and/or through Defendant Misicom's supervisory employees and agents.

17.     Defendant Misicom's actions and omissions described in this Complaint and causing injury to Plaintiff were done knowingly and willfully.

18.     Defendant Misicom is a foreign profit corporation organized under the laws of California and doing business in the State of New Jersey, and within Middlesex County.

19.     Defendant Misicom maintains a business within New Jersey at: 90 Woodbridge Ctr Drive, Suite 410, Woodbridge, NJ 07095.

20.     At all times relevant to this Complaint Defendant Misicom was and is an employer within the meaning of the NJWHL, N.J.S.A. 34:11-56a1(g), and employed employees, including Plaintiff.

3

21.     At all times relevant to this Complaint, Defendant Misicom has been and is an employer as that term is defined by NJLAD, N.J.S.A. 10:5-5(e).

**Defendants' Status as Joint Employers**

22.     At all times relevant to this Complaint, Defendant Merck, Defendant NTT, and Defendant Misicom were joint employers, and these Defendants jointly employed Plaintiff.

23.     At all times relevant to this Complaint, the Defendant Merck exercised immediate control over the promulgation of work rules and conditions of employment that Plaintiff was subjected to, including rules and conditions related to the hiring, firing, and disciplining of Plaintiff, the issuance of work assignments and instructions, and the supervision of Plaintiff's day-to-day activities.

24.     At all times relevant to this Complaint, the Defendant NTT exercised immediate control over the promulgation of work rules and conditions of employment that Plaintiff was subjected to, including rules and conditions related to the hiring, firing, and disciplining of Plaintiff, the issuance of work assignments and instructions, and the supervision of Plaintiff's day-to-day activities.

25.     At all times relevant to this Complaint, the Defendant Misicom exercised immediate control over the promulgation of work rules and conditions of employment that Plaintiff was subjected to, including rules and conditions related to the hiring, firing, and disciplining of Plaintiff, the issuance of work assignments and instructions, and the supervision of Plaintiff's day-to-day activities.

26.     At all times relevant to this Complaint, the Defendants exercised common control over supervision of Plaintiff.

4

**Plaintiff Robert Nething**

27.     Plaintiff is an adult resident of Hackettstown, New Jersey, in Warren County.

28.     Plaintiff is sixty-one (61) years of age.

## FACTUAL ALLEGATIONS

29.     Defendants employed Plaintiff from 2006 until March 31, 2017 when he was unlawfully terminated.

30.     Plaintiff was working for Schering Plough ("SP") in 2009 when it was acquired by Defendant Merck.

31.     When Merck acquired SP, Merck required Plaintiff to utilize one of three vendors to continue as a contract employee.

32.     Before Plaintiff chose Misicom, Misicom took Plaintiff and one other similarly situated employee to lunch in Springfield, New Jersey.

33.     Plaintiff has never been to a Misicom office.

34.     If Plaintiff needed to speak with anyone at Misicom, he would contact Misicom at the company's office in New Jersey.

35.     At some point during Plaintiff's employment with Defendants, NTT acquired Misicom.

36.     At all times relevant to this Complaint, Plaintiff was an employee of Defendants.

37.     At all times relevant to this Complaint Plaintiff performed his duties fully, effectively, faithfully, and efficiently.

38.     At all times relevant to this Complaint met or exceeded all reasonable business expectations as an employee within Defendants' workforce.

5

**Wage & Hour Violations**

39.     At all times relevant to this Complaint, Plaintiff was compensated on an hourly basis.

40.     At all times relevant to this Complaint, Defendants regularly required Plaintiff to work in excess of forty (40) hours per week.

41.     During Plaintiff's employment with Defendants, Plaintiff was required to work hours "off the clock" and was required to work hours in excess of forty (40) in a workweek without receiving wages for those hours as required by law.

42.     Defendants had actual and/or constructive knowledge that Plaintiff was working unpaid hours.

43.     In fact, Defendants directed Plaintiff to record only forty (40) hours on his timesheets regardless if he worked significantly more than forty (40) hours in a week.

44.     Throughout Plaintiff's employment, Defendants failed to pay Plaintiff for all hours worked in violation of the NJWHL and NJWPL.

**Age Discrimination**

45.     Despite Plaintiff's longevity and excellent work history, Defendants summarily terminated Plaintiff because of his age.

46.     Though Defendants purportedly considered Plaintiff an independent contractor of Defendant Merck, Defendants actually jointly employed Plaintiff.

47.     Plaintiff worked for Defendants pursuant to a series of purported independent contractor agreements for more than 10 years beginning in 2006.

6

48.     In October 2016, Plaintiff applied for the full-time position of Senior Specialist, Technical Analyst -- a job that he had been performing for Defendants for a number of years and for which he was eminently qualified.

49.     Plaintiff advised his supervisor, Maryellen Walter ("Walter"), that he had applied for the position and Walter responded, via email, "Happy to see this email!"

50.     Despite being qualified for the analyst position, Defendants hired a younger, less experienced person for the job.

51.     Incredibly, Defendants asked Plaintiff to train the person who was hired in his stead.

52.     Shortly thereafter, Defendants unlawfully and summarily terminated Plaintiff.

53.     Thus, after approximately eleven years of dedicated service, Defendants unlawfully terminated Plaintiff's employment.

54.     Moreover, the age discrimination to which Plaintiff was subjected was not limited to his termination.

55.     Plaintiff was also subjected to numerous discriminatory comments from management, such as "why don't you just retire?" and "you're sick a lot."

56.     Such comments are more evidence of the Defendants' discriminatory animus towards Plaintiff.

### FIRST CLAIM FOR RELIEF
#### Violations of the NJWPL and NJWHL- Unpaid Wages
#### (Against All Defendants)

57.     Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

58.     During the statute of limitations period covered by these claims, Plaintiff worked hours for which he was not paid.

59.     At all relevant times, Defendants has operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines, and rules of willfully failing and refusing to pay Plaintiff the regular hourly rate for work done in his employment.

60.     Defendants' failure to comply with the NJWPL and NJWHL caused Plaintiff to suffer loss of wages and interest thereon.

61.     Due to Defendants' violations of NJWHL, Plaintiff is entitled to recover from Defendants lost wages, including front pay and back pay, unpaid wages and interest owed on unpaid wages held by Defendants over an extended period of time, as well as reasonable attorneys' fees and costs.

## COUNT TWO
## AGE DISCRIMINATION IN VIOLATION OF THE NJLAD
### (Against All Defendants)

62.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

63.     At all times relevant to this Complaint Defendants were, and continue to be, employers within the meaning of the NJLAD, N.J.S.A. § 10:5-5(e) and employed employees, including Plaintiff.

64.     The NJLAD makes it unlawful to discriminate against any individual on the basis of age.

65.     Plaintiff is sixty-one (61) years old.

66. Plaintiff was subjected to harassment and discrimination based on his age.

67. The harassment was sufficiently severe or pervasive to materially alter the terms and conditions of Plaintiff's employment and to create a discriminatorily abusive working environment.

68. At all times relevant to this Complaint, Defendants' discrimination against Plaintiff based on his age substantially and materially altered Plaintiff's conditions of employment in ways that were adverse to Plaintiff.

69. Defendants discriminated against Plaintiff because of his by subjecting Plaintiff to harassment, humiliating Plaintiff, requiring Plaintiff to train his younger replacement, and, ultimately, summarily discharging Plaintiff from his employment.

70. Defendants were aware of, or should have been aware of, and are directly and vicariously responsible for, such hostile work environment.

71. Defendants engaged in unlawful employment practices and unlawful discriminatory as those terms are defined by the NJLAD, N.J.S.A. 10:5-12.

72. These acts violate NJLAD and are illegal.

73. In taking the above-described discriminatory actions, Defendants acted with malice and reckless indifference to Plaintiff's rights pursuant to NJLAD giving rise to punitive damages.

74. As a direct and proximate result of Defendants' aforementioned discriminatory conduct, Plaintiff suffered monetary damages, as well as humiliation, emotional distress, mental anguish and suffering, and damage to his professional reputation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief on all Claims for Relief:

A.      Damages in an amount to be determined at trial

B.      All compensatory and economic damages;

C.      All reasonable expenses incurred by Plaintiff, including court costs and reasonable and necessary attorney fees, including attorney's fees as provided by statutes, and other relief, both in law and equity, to which Plaintiff may show herself justly entitled;

D.      Liquidated damages.

E.      All punitive and statutory damages authorized by law;

F.      Pre-judgment and post-judgment interest; and

G.      Such further relief as the Court finds just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which he has a right.

## CERTIFICATION PURSUANT TO R. 4:5-1

I certify that the matter in controversy is not subject of any other action pending in any Court or of pending arbitration proceeding presently known to the parties and no other action or arbitration is presently contemplated.

## DESIGNATION OF TRIAL COUNSEL

Plaintiff hereby designates Michael DiChiara, Esq., as trial counsel in this matter.

KRAKOWER DICHIARA LLC
Attorneys for Plaintiff

By: _____
Michael R. DiChiara

Dated: February 26, 2018

11

Anne B. Sekel, Esq. (N.J. Bar No. 038842005)
FOLEY & LARDNER LLP
90 Park Avenue
New York, NY 10016
Tel: (212) 682-7474
Fax: (212) 687-2329

*Attorneys for Defendant NTT DATA, Inc.*

FILED

MAR 02 2018

HON. ALAN. G. LESNEWICH, J.S.C.

-------------------------------------------------------X

ROBERT NETHING,

           Plaintiff,

   -against-

MERCK & CO., INC. AND NTT DATA, INC.,

        Defendants.

-------------------------------------------------------X

**SUPERIOR COURT OF
NEW JERSEY**

**LAW DIVISION
UNION COUNTY**

DOCKET NO.: UNN-L-003524-17

CIVIL ACTION

**[PROPOSED] ORDER ADMITTING
ATTORNEY PRO HAC VICE**

     This matter being opened to the court by Anne B. Sekel, a New Jersey attorney and the

attorney of record for Defendant NTT Data, Inc. ("Defendant") to permit Donald Schroeder, an

attorney admitted to practice law in the Commonwealth of Massachusetts, to participate with

other counsel for Defendant in all phases of the trial, and it appearing that Mr. Schroeder is a

licensed attorney in good standing in the Commonwealth of Massachusetts and it appearing that

there has been an attorney/client relationship between Defendant and Mr. Schroeder for an

extended period of time, and this motion having been unopposed and on consent.

     It is on this _2nd_ day of March, 2018 ORDERED that Donald Schroeder be and hereby is

admitted *pro hac vice* and is authorized to appear and participate with other counsel for

Defendant in all phases of trial, subject to the following conditions:

1.      Mr. Schroeder shall abide by the *New Jersey Court Rules* including all disciplinary rules, *R.* 1.20-1 and *R.* 1.28-2.

2.      Mr. Schroeder shall, and hereby does, consent to the appointment of the Clerk of the Supreme Court as his/her agent upon whom service of process may be made for all actions against Defendant that may arise out of his/her participation in the matter.

3.      Mr. Schroeder shall immediately notify the court of any matter affecting his standing at the Bar of any other jurisdiction.

4.      Mr. Schroeder shall have all pleadings, briefs, and other papers filed with the court signed by an attorney of record authorized to practice in New Jersey, who shall be held responsible for them, the conduct of the litigation and the attorney admitted herein.

5.      Mr. Schroeder cannot be designated as trial counsel.

6.      No discovery, motion, trial or any other proceedings delay shall occur or be requested by reason of the inability of Mr. Schroeder to be in attendance.

7.      Mr. Schroeder must, within ten (10) days, pay the fees required by *R.* 1:20-1(b) and *R.* 1:28-2 and submit an affidavit of compliance.

8.      *Pro hac vice* admission will automatically terminate for failure to make the initial and any annual payment required by *R.* 1:20-1(b) and *R.* 1:28-2.

9.      Non-compliance with any of the terms of this order shall constitute grounds for removal.

10.      A copy of this order shall be served on all parties within seven (7) days of the date hereof.

/s/ *Alan G. Lesnewich, J.S.C.*
_____
J.S.C. , Hon. Alan G. Lesnewich

2

4824-5004-6301.1

Anne B. Sekel, Esq. (N.J. Bar No. 038842005)
FOLEY & LARDNER LLP
90 Park Avenue
New York, NY 10016
Tel: (212) 682-7474
Fax: (212) 687-2329

*Attorneys for Defendants NTT DATA, Inc.*
*and MISICOM, Inc.*

-------------------------------------------------- X

ROBERT NETHING,                :    **SUPERIOR COURT OF**
                               :    **NEW JERSEY**
            Plaintiff,       :
                                 :    **LAW DIVISION:**
    -against-                :    **UNION COUNTY**
                                 :
MERCK & CO., INC., NTT DATA, INC., and   :    DOCKET NO.: UNN-L-003524-17
MISICOM, INC.,                  :
                                 :    CIVIL ACTION
           Defendants.     :
                                 :    **NOTICE OF MOTION**
                                 :    **ON CONSENT**

-------------------------------------------------- X

      **PLEASE TAKE NOTICE** that, upon the annexed affidavits of Anne B. Sekel and

Jillian M. Collins, and the accompanying exhibits, and with **Plaintiff Robert Nething's consent**,

Defendants NTT Data, Inc. and MISICOM, Inc. will move this Court before the Honorable Alan

G. Lesnewich, at the Superior Court of New Jersey, Union County, located at 2 Broad St.,

Elizabeth, New Jersey on May 11, 2018, at 9:30 a.m., or as soon thereafter as counsel may be

heard, for an Order admitting Jillian M. Collins, Esquire, to appear *pro hac vice*, to represent

Defendants NTT Data, Inc. and MISICOM, Inc. in this action.

Dated:  New York, New York
        April 24, 2018

Respectfully submitted,

FOLEY & LARDNER, LLP

By: _____
    Anne B. Sekel (N.J. Bar No. 038842005)
    Foley & Lardner LLP
    90 Park Avenue
    New York, NY  10016
    212-338-3417 direct
    212-682-7474 general
    asekel@foley.com

*Attorneys for Defendants NTT DATA, Inc.
and MISICOM, Inc.*

Anne B. Sekel, Esq. (N.J. Bar No. 038842005)
FOLEY & LARDNER LLP
90 Park Avenue
New York, NY 10016
Tel: (212) 682-7474
Fax: (212) 687-2329

*Attorneys for Defendants NTT DATA, Inc.
and MISICOM, Inc.*

| | |
|---|---|
| ----------------------------------------------------------X | |
| ROBERT NETHING, | **SUPERIOR COURT OF** |
| | **NEW JERSEY** |
| Plaintiff, | |
| | **LAW DIVISION** |
| -against- | **UNION COUNTY** |
| | |
| MERCK & CO., INC., NTT DATA, INC., and | DOCKET NO.: UNN-L-003524-17 |
| MISICOM, INC., | |
| | CIVIL ACTION |
| Defendants. | |
| | **[PROPOSED] ORDER ADMITTING** |
| | **ATTORNEY *PRO HAC VICE*** |
| ----------------------------------------------------------X | |

This matter being opened to the Court by Anne B. Sekel, a New Jersey attorney and the

attorney of record for Defendants NTT Data, Inc. and MISICOM, Inc. ("Defendants") to permit

Jillian M. Collins, an attorney admitted to practice law in the Commonwealth of Massachusetts

and the District of Columbia, to participate with other counsel for Defendants in all phases of the

trial, and it appearing that Ms. Collins is a licensed attorney in good standing in the

Commonwealth of Massachusetts and the District of Columbia and it appearing that there has

been an attorney/client relationship between Defendants and Ms. Collins for an extended period

of time, and this motion having Plaintiff's consent,

It is on this ___ day of May, 2018 ORDERED that Jillian M. Collins be and hereby is

admitted *pro hac vice* and is authorized to appear and participate with other counsel for

Defendants in all phases of trial, subject to the following conditions:

4831-1948-5795.1

1.       Ms. Collins shall abide by the *New Jersey Court Rules* including all disciplinary rules, *R.* 1.20-1 and *R.* 1.28-2.

2.       Ms. Collins shall, and hereby does, consent to the appointment of the Clerk of the Supreme Court as his/her agent upon whom service of process may be made for all actions against Defendants that may arise out of his/her participation in the matter.

3.       Ms. Collins shall immediately notify the Court of any matter affecting her standing at the Bar of any other jurisdiction.

4.       Ms. Collins shall have all pleadings, briefs, and other papers filed with the Court signed by an attorney of record authorized to practice in New Jersey, who shall be held responsible for them, the conduct of the litigation and the attorney admitted herein.

5.       Ms. Collins cannot be designated as trial counsel.

6.       No discovery, motion, trial or any other proceedings delay shall occur or be requested by reason of the inability of Ms. Collins to be in attendance.

7.       Ms. Collins must, within ten (10) days, pay the fees required by *R.* 1:20-1(b) and *R.* 1:28-2 and submit an affidavit of compliance.

8.       *Pro hac vice* admission will automatically terminate for failure to make the initial and any annual payment required by *R.* 1:20-1(b) and *R.* 1:28-2.

9.       Non-compliance with any of the terms of this order shall constitute grounds for removal.

10.      A copy of this order shall be served on all parties within seven (7) days of the date hereof.

_____
Honorable Alan G. Lesnewich

2

4831-1948-5795.1

Anne B. Sekel, Esq. (N.J. Bar No. 038842005)
FOLEY & LARDNER LLP
90 Park Avenue
New York, NY 10016
Tel: (212) 682-7474
Fax: (212) 687-2329

*Attorneys for Defendants NTT DATA, Inc.*
*and MISICOM, Inc.*

------------------------------------------------------- X

| | |
|---|---|
| ROBERT NETHING,<br><br>     Plaintiff,<br><br> -against-<br><br>MERCK & CO., INC., NTT DATA, INC., and<br>MISICOM, INC.,<br><br>     Defendants. | **SUPERIOR COURT OF**<br>**NEW JERSEY**<br><br>**LAW DIVISION**<br>**UNION COUNTY**<br><br>DOCKET NO.: UNN-L-003524-17<br><br>CIVIL ACTION<br><br>**AFFIDAVIT OF ANNE B. SEKEL** |

------------------------------------------------------- X

STATE OF NEW YORK  )
          ) ss.:
COUNTY OF NEW YORK )

  ANNE B. SEKEL, being first duly sworn deposes and states as follows:

  1.  I am a partner with the law firm of Foley & Lardner LLP, counsel for

Defendants NTT Data, Inc. and MISICOM, Inc. ("Defendants") in this action. I am a member in

good standing of the Bar of the State of New York, and the Bar of the State of New Jersey, and I

submit this affidavit in support of Defendants' motion to admit Jillian M. Collins, Esq. *pro hac*

*vice* to represent Defendants in this action. Ms. Collins is associated in this matter with me. I

am a New Jersey counsel of record qualified to practice pursuant to R. 1:21-1.

  2.  I know of no reason why Ms. Collins should not be admitted *pro hac vice*.

No prior application has been submitted to the Court.

4831-1948-5795.1

3.      Ms. Collins is a member in good standing of the Bars of the Commonwealth of Massachusetts and the District of Columbia.  No disciplinary proceedings are pending against Ms. Collins in any jurisdiction and no discipline has previously been imposed on Ms. Collins in any jurisdiction.

4.      Ms. Collins is an associate in the law firm Foley & Lardner LLP, and she practices in the firm's offices at 3000 K Street Northwest, Suite 600, Washington, District of Columbia, 20007.

5.      Ms. Collins of Foley & Lardner LLP has been retained by Defendants as counsel for three years and has asked that Foley & Lardner LLP continue to represent them in this action, and Defendants request that Jillian M. Collins be admitted *pro hac vice* so that she may represent Defendants for all purposes before this Court.

WHEREFORE, I respectfully request that the Court grant Defendants' motion for an Order admitting Jillian M. Collins, Esq. to represent Defendants as counsel in this action.

_____
ANNE B. SEKEL

Sworn to and subscribed before me this
24th day of April, 2018.

_____
Notary Public

EMILY A. BEER
Notary Public, State of New York
No. 02BE6340324
Qualified in Westchester County
Commission Expires April 18, 20 20

Anne B. Sekel, Esq. (N.J. Bar No. 038842005)
FOLEY & LARDNER LLP
90 Park Avenue
New York, NY 10016
Tel: (212) 682-7474
Fax: (212) 687-2329

*Attorneys for Defendants NTT DATA, Inc.*
*and MISICOM, Inc.*

-----------------------------------------------------X
                                     :

ROBERT NETHING,

           Plaintiff,

  -against-

MERCK & CO., INC., NTT DATA, INC., and
MISICOM, INC.,

           Defendants.
-----------------------------------------------------X

**SUPERIOR COURT OF**
**NEW JERSEY**

**LAW DIVISION:**
**UNION COUNTY**

DOCKET NO.: UNN-L-003524-17

CIVIL ACTION

**AFFIDAVIT OF**
**JILLIAN M. COLLINS**

WASHINGTON        )
                    ) ss.:
DISTRICT OF COLUMBIA  )

      JILLIAN M. COLLINS, being first duly sworn deposes and states as follows:

      1.      I am an associate at the law firm of Foley & Lardner, LLP, counsel for

Defendants NTT DATA, Inc. and MISICOM, Inc. ("Defendants") in this action.  I am a member

in good standing of the Bars of the Commonwealth of Massachusetts and the District of

Columbia[1], and I submit this affidavit in support of Defendants' motion to admit me *pro hac vice*

to represent Defendants in this action.

---

[1] A Certificate of Good Standing issued from both the Commonwealth of Massachusetts and the District of
Columbia are attached hereto as Exhibit A.

2.       I am an associate at the law firm Foley & Lardner LLP, and I practice at the firm's offices at 3000 K Street Northwest, Suite 600, Washington, District of Columbia, 20007.

3.       I am associated in the above-captioned matter with Anne B. Sekel, a New Jersey counsel of record qualified to practice pursuant to R. 1:21-1.

4.       Defendants have requested that I represent them in the above-captioned action.

5.       No disciplinary proceedings are pending against me in any jurisdiction and no discipline has previously been imposed on me in any jurisdiction.

6.       I have been retained by Defendants as counsel for three years and Defendants have requested that I continue to represent them in this action.  Therefore, I request that I be admitted *pro hac vice* so that I may represent Defendants for all purposes before this Court.

WHEREFORE, I respectfully request that the Court grant Defendants' motion for an Order admitting me, Jillian M. Collins, Esq. to represent Defendants as counsel in this action.

_Jillian M. Collins_
JILLIAN M. COLLINS

Sworn to and subscribed before me this
23rd day of April, 2018

_A. B. Big_
Notary Public



4829-2119-4843.3

# EXHIBIT A

# COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.

———————

BE IT REMEMBERED, that at the Supreme Judicial Court holden at Boston within and for said County of Suffolk, on the **twelfth** day of **January** A.D. **2012** , said Court being the highest Court of Record in said Commonwealth:

## Jillian Marie Collins

being found duly qualified in that behalf, and having taken and subscribed the oaths required by law, was admitted to practice as an Attorney, and, by virtue thereof, as a Counsellor at Law, in any of the Courts of the said Commonwealth: that said Attorney is at present a member of the Bar, and is in good standing according to the records of this Court*.

In testimony whereof, I have hereunto set my hand and affixed the seal of said Court, this **thirteenth** day of **February** in the year of our Lord **two thousand and eighteen.**

MAURA S. DOYLE, Clerk

* Records of private discipline, if any, such as a private reprimand imposed by the Board of Bar Overseers or by any court, are not covered by this certification.
X3116



On behalf of JULIO A. CASTILLO, Clerk of the District of Columbia Court of Appeals,
the District of Columbia Bar does hereby certify that

*Jillian Marie Collins*

was duly qualified and admitted on **September 9, 2016** as an attorney and counselor entitled
to practice before this Court; and is, on the date indicated below, an **Active** member in
good standing of this Bar.

In Testimony Whereof,
I have hereunto subscribed my
name and affixed the seal of this
Court at the City of Washington,
D.C., on 13-Feb-18.

JULIO A. CASTILLO
Clerk of the Court

Issued By:
District of Columbia Bar Membership

For questions or concerns, please contact the D.C. Bar Membership Office at 202-626-3475 or email
memberservices@dcbar.org.

Anne B. Sekel, Esq. (N.J. Bar No. 038842005)
FOLEY & LARDNER LLP
90 Park Avenue
New York, NY 10016
Tel: (212) 682-7474
Fax: (212) 687-2329

*Attorneys for Defendants NTT DATA, Inc.*
*and MISICOM, Inc.*

                                       FILED
                                    MAY 14 2018
                          HON. ALAN. G. LESNEWICH, J.S.C.

-------------------------------------------------X
ROBERT NETHING,                        :  **SUPERIOR COURT OF**
                                       :  **NEW JERSEY**
              Plaintiff,               :
                                       :  **LAW DIVISION**
       -against-                       :  **UNION COUNTY**
                                       :
MERCK & CO., INC., NTT DATA, INC., and :  DOCKET NO.: UNN-L-003524-17
MISICOM, INC.,                         :
                                       :  CIVIL ACTION
              Defendants.              :
                                       :  ~~[PROPOSED]~~ **ORDER ADMITTING**
                                       :  **ATTORNEY *PRO HAC VICE***
-------------------------------------------------X

     This matter being opened to the Court by Anne B. Sekel, a New Jersey attorney and the

attorney of record for Defendants NTT Data, Inc. and MISICOM, Inc. ("Defendants") to permit

Jillian M. Collins, an attorney admitted to practice law in the Commonwealth of Massachusetts

and the District of Columbia, to participate with other counsel for Defendants in all phases of the

trial, and it appearing that Ms. Collins is a licensed attorney in good standing in the

Commonwealth of Massachusetts and the District of Columbia and it appearing that there has

been an attorney/client relationship between Defendants and Ms. Collins for an extended period

of time, and this motion having Plaintiff's consent, and opposition having not been filed;

     It is on this \_14th\_ day of May, 2018 ORDERED that Jillian M. Collins be and hereby is

admitted *pro hac vice* and is authorized to appear and participate with other counsel for

Defendants in all phases of trial, subject to the following conditions:

1.      Ms. Collins shall abide by the *New Jersey Court Rules* including all disciplinary rules, *R.* 1.20-1 and *R.* 1.28-2.

2.      Ms. Collins shall, and hereby does, consent to the appointment of the Clerk of the Supreme Court as his/her agent upon whom service of process may be made for all actions against Defendants that may arise out of his/her participation in the matter.

3.      Ms. Collins shall immediately notify the Court of any matter affecting her standing at the Bar of any other jurisdiction.

4.      Ms. Collins shall have all pleadings, briefs, and other papers filed with the Court signed by an attorney of record authorized to practice in New Jersey, who shall be held responsible for them, the conduct of the litigation and the attorney admitted herein.

5.      Ms. Collins cannot be designated as trial counsel.

6.      No discovery, motion, trial or any other proceedings delay shall occur or be requested by reason of the inability of Ms. Collins to be in attendance.

7.      Ms. Collins must, within ten (10) days, pay the fees required by *R.* 1:20-1(b) and *R.* 1:28-2 and submit an affidavit of compliance.

8.      *Pro hac vice* admission will automatically terminate for failure to make the initial and any annual payment required by *R.* 1:20-1(b) and *R.* 1:28-2.

9.      Non-compliance with any of the terms of this order shall constitute grounds for removal.

A copy of this Order shall be considered served upon all parties by the uploading of the within Order by this Court to eCourts.

hereof.

X Unopposed

*/s/ Alan G. Lesnewich, J.S.C.*

Honorable Alan G. Lesnewich

FILED

AUGUST 16TH 2018

HON. ALAN. G. LESNEWICH, J.S.C.

ORDER PREPARED BY THE COURT

---------------------------------------------------------- X

ROBERT NETHING,

            Plaintiff,

   -against-

MERCK & CO., INC., NTT DATA, INC., and
MISICOM, INC.,

        Defendants.

---------------------------------------------------------- X

**SUPERIOR COURT OF
NEW JERSEY LAW DIVISION:
UNION COUNTY**

DOCKET NO.: UNN-L-003524-17

CIVIL ACTION

**ORDER**

      The matter being brought before the Court by way of Motion to Dismiss Amended Complaint and Compel Arbitration or, in the alternative, to Stay, filed by Defendants, NTT Data, Inc., and MISICOM, Inc., represented by Anne B. Sekel, Esq., Donald W. Schroeder, Esq., and Jillian M. Collins, Esq., of Foley Lardner, LLP; and Plaintiff, Robert Nething, represented by Michael R. DiChiara, Esq., of Krakower DiChiara LLC, having filed opposition; and Defendants having submitted a reply certification; and this motion originally returnable April 13, 2018, and this matter having been adjourned to July 20, 2018 by consent of the parties; and the Court having read and considered the written submissions of the parties; and the parties having appeared for Oral argument on July 20, 2018; and for good cause having been shown; and for the reasons set forth in the attached Statement of Reasons;

      It is on this <u>16th</u> day of August, 2018;

      ORDERED that:

1.    Defendant's Motion to Dismiss Plaintiff's Amended Complaint and Compel arbitration is hereby DENIED; and it is further Ordered
2.    Defendant's Motion to Stay this matter is hereby DENIED.

A copy of this Order shall be considered served upon all parties by the uploading of the within Order by this Court to eCourts.

                              /s/ Alan G. Lesnewich, J.S.C.

                          Hon. Alan G. Lesnewich,    J.S.C.

**X** Opposed

1

## STATEMENT OF REASONS

Robert Nething v. Merck & Co., Inc., NTT Data, Inc., and MISICOM, Inc.
Docket No. UNN-L-3524-17

**HEARING DATE:   July 20, 2018**

Attorney for Plaintiff: Michael DiChiara, Esq., of Krakower Dichiara, LLC

Attorney for Defendants: by Anne B. Sekel, Esq., Donald W. Schroeder, Esq., and Jillian M. Collins, Esq.of Foley & Lardner, LLP

## I.   INTRODUCTION

### a.  Current Motion

This matter comes before the court pursuant to a motion filed on March 19, 2018 by Defendants, NTT Data, Inc., ("NTT") and MISICOM, Inc., ("MISICOM"), seeking to dismiss Plaintiff's Amended Complaint and Compel Arbitration. Defendants are represented by Anne Sekel, Esq., Donald W. Schroeder, Esq., and Jillian M. Collins, Esq., all with the law firm of Foley & Lardner LLP.

On May 15, 2018, Plaintiff, Robert Nething, represented by Michael DiChiara, Esq., of the law firm of Krakower Dichiara LLC. submitted opposition papers.

On May 21, 2018, Defendants submitted a reply brief.

### b.  Brief Statement of Salient Facts and Procedural History

By way of background, the current matter arises out of allegations of discrimination pursuant to N.J.S.A. § 10:5-1 to 49, and allegations of violations of the New Jersey Wage Payment Law, N.J.S.A. § 34:11-4.1, and the New Jersey Wage and Hour Law, N.J.S.A. § 34:11-56(a), all having a genesis in an employment relationship between Plaintiff and MISICOM, a subsidiary of NTT.

Plaintiff commenced his employment with MISICOM on February 9, 2011.  On that same date, Plaintiff executed an Employment Agreement ("Agreement"). Section II of the Employment

addressed Plaintiff's compensation. Each page of the nine-page Agreement identifies MISICOM's address to be 90 Woodbridge Center Drive, Suite 410, Woodbridge, New Jersey 07095. The preamble of the Agreement identifies MISICOM as a California corporation having the aforementioned Woodbridge, N.J. address. Plaintiff is identified as an individual residing in Hackettstown, NJ. Paragraph H of the Agreement states that New York Law applies. Furthermore, the Agreement contained an Arbitration Provision, which provides, in relevant part, as follows:

> Any dispute with respect to this Agreement shall be decided by arbitration in the City of New York, in accordance with the rules of the American Arbitration Association as then in force by on arbitrator appointed in accordance with such rules. The arbitrator shall decide all matters in accordance with the applicable law and this Agreement. All costs in connection with any proceedings hereunder, other than the attorneys' fees and disbursement of each party, shall be borne equally by the parties. The arbitrator's award shall be final, conclusive and binding on the parties, and shall be the exclusive remedy regarding any claims, counterclaims, issues or accounting presented or pled to the arbitrator. Judgment on the award may be entered in any court or other tribunal.

[See § VII (D) of the Employment Agreement, Def.'s Exhibit B].

Plaintiff filed a Complaint on October 3, 2017. Plaintiff filed an Amended Complaint on February 26, 2018. The Amended Complaint contained allegations that Defendant MISICOM failed to pay Plaintiff for all hours worked and also unlawfully discriminated against him based on his age. Defendants filed this current motion seeking to dismiss Plaintiff's claims against NTT and MISICOM, and compel arbitration pursuant to the pertinent terms of the Arbitration Provision contained in the Agreement.

The briefs submitted by counsel were well researched and drafted. On July 20, 2018, Counsel appeared for oral argument and professionally and persuasively set forth their respective clients' positions.

## II.   ARGUMENTS

### a.   Defendants' Motion to Dismiss Plaintiff's Complaint or Stay   and Compel Arbitration

Defendants contend that because Plaintiff signed the Agreement that included an arbitration provision, he should be bound to arbitrate the dispute currently pending in this court. In support of their argument, Defendants argue that New York Law applies pursuant to § VII (H) of the

Employment Agreement, and under New York Law, an employment contract that contains an arbitration provision is valid and enforceable because the agreement to hire and pay an employee for services is sufficient consideration. See Ball v. SFX Broadcasting, 665 N.Y.S.2d 444 (N.Y. App. Div. 1997). Further, Defendants argue that because NTT is the parent company of MISICOM, this relationship permits NTT to compel arbitration of disputes pursuant to the Arbitration Provision, even though NTT was not a signatory to the Agreement. In support of this proposition, Defendant NTT cites three cases where a parent company may compel arbitration of claims brought by a Plaintiff under a contract with a subsidiary company. Finally, Defendants maintain that pursuant to the rules of the American Arbitration Association, an arbitrator should determine whether a particular grievance is within the scope of the arbitration clause. Thus, that should not be an issue before this court. For the foregoing reasons, Defendants request their motion be granted.

### b.  Plaintiffs Opposition

In opposition, Plaintiff argues that New Jersey law should apply in determining the arbitrability of the claims at issue and that this court should find the arbitration clause invalid and unenforceable. In regards to applying New Jersey Law, Plaintiff contends that New Jersey has a substantial relationship to the parties, thereby negating the New York choice-of-law provision in the Agreement. In support of this statement, Plaintiff explains that he always communicated with the MISICOM New Jersey office and even signed the Agreement in Springfield, New Jersey. Further, because New Jersey law applies, Plaintiff maintains that a New Jersey court should determine any issues concerning arbitrability. Finally, Plaintiff contends that the Arbitration Provision is unenforceable because it would be prohibitively expensive and Plaintiff did not clearly, and unambiguously, waive his right to have a jury resolve the dispute.

### c. Defendants' Reply

In reply, Defendants argue that Plaintiff agreed to the Arbitration Provision in the Agreement when he signed the document. Moreover, the choice-of-law provision is enforceable, and New York law should apply. Finally, Defendants maintain that the parties explicitly agreed, by incorporating the rules of the American Arbitration Association, that an arbitrator was empowered to determine the issue of arbitrability. As such, Defendants request that Plaintiff's claims against them be dismissed and the Court compel Plaintiff to bring all claims in arbitration.

4

## III. Legal Analysis

Initially, Defendants rely upon <u>North Bergen Rex. Transport v. TLC</u>, 158 N.J. 561 (1969) for the proposition that because MISICOM is headquartered in New York and the parties contracted to have New York law apply, there is a substantial relationship between the parties, the Agreement and New York. As such, they content that the matter should be determined in New York under New York law. In <u>North Bergen</u>, the Supreme Court of New Jersey wrote as follows:

> Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy.

[<u>Instructional Sys., Inc. v. Computer Curriculum Corp.</u>, 130 N.J. 324, 341 (1992)].

However, New Jersey law will govern if:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which * * * would be the state of the applicable law in the absence of an effective choice of law by the parties.
>
> [<u>Id.</u> at 342(quoting Restatement (Second) of Conflicts of Laws § 187 (1969) (Restatement))].

Although Defendants' argument has merit upon initial review, the court has concluded that in light of the Restatement language cited above at subsection (b), or because the case involves a procedural law of New Jersey, that the <u>North Bergen</u> case is distinguishable. In the <u>North Bergen</u> case, the threshold issue involved the reasonableness of attorneys' fees and whether that should be decided under New Jersey or Illinois law. <u>North Bergen Rex. Transport v. TLC</u>, 158 N.J. 561 (1969). The Supreme Court of New Jersey set forth the usual standard relied upon by Defendants here, but then moved on to make it clear that Illinois law would nevertheless apply because it was procedural law that was implicated. Here, the same is true. If not, in light of the fundamental policy of New Jersey to make certain that litigants have a full and fair opportunity to exercise the right to a trial

5

by jury, New Jersey law should apply.  Based upon that conclusion, the court will move on to address the other issues raised by Defendants.[1]

Under New Jersey law, "the law presumes that a court, not an arbitrator, decides any issue concerning arbitrability." Morgan v. Sanford Brown Inst., 225 N.J. 289 (2016). To overcome this presumption, an arbitration clause must contain "`clea[r] and unmistakabl[e]' evidence `that the parties

---

[1] In addition, because Plaintiff's Complaint was brought in New Jersey under the Law Against Discrimination ("LAD"), the issue of what law applies in determining the enforceability of the Arbitration clause is subject to New Jersey's choice-of-law rule. Gantes v. Kason Corp., 145 N.J. 478, 484(1996). New Jersey has adopted the "governmental-interest" standard, "which requires application of the law of the state with the greatest interest in resolving the particular issue that is raised in the underlying litigation." Id.; see Veazey v. Doremus, 103 N.J. 244, 247-48 (1986); Ronson v. Talesnick, 33 F.Supp.2d 347 (D.N.J. 1999). "The first prong of the court's governmental-interest analysis seeks to find "whether a conflict exists between the law of the interest states." Id.; See Veazy, supra, 103 N.J. at 478. Where the court finds a conflict, the second prong requires the court to "identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties." Id. at 487.

"The qualitative, not the quantitative, nature of a state's contacts ultimately determines whether its law should apply." Pfizier v. Employers Ins. Of Wausau, 154 N.J. 187, 198 (1998) (quoting Veazey, supra, 103 N.J. at 248). "Section 145(2) of the Restatement specifies the contacts that are most significant to that analysis:  the place where the injury occurred; the place where the conduct causing injury occurred; the place where the conduct causing the injury occurred; the domicile, residence, nationality, place of incorporation and place of business of the parties; and the place where the relationship, if any, between the parties is centered.  Those contacts are 'considered, however, only to the extent that they are relevant to the purposes of the particular laws in conflict.'" Fu v. Fu, 160 N.J. 108, 125 (1999) (quoting White v. Smith, 398 F. Supp. 130, 134 (D.N.J. 1975)).

In New Jersey, "[t]he absence of any language in the arbitration provision that [a party is] waiving [its] statutory right to seek relief in a court of law renders the provision unenforceable." Atalese v. U.S. Legal Services Grp. L.P., 219 N.J. 430, 436 (2014). "[N]o prescribed set of words must be included in an arbitration clause to accomplish a waiver of rights.  However, whatever words compose an arbitration agreement, they must be clear and unambiguous that a [party] is choosing to arbitrate disputes rather than have them resolved in a court of law." Id. at 447.  Conversely, in the State of New York, courts interfere as little as possible with agreements to arbitrate. City of Newburgh v. McGrane, 82 A.D.3d 1225, 1226 (2011). In New York, "the use of the phrase 'either party may submit such dispute to arbitration' should be interpreted to limit the aggrieved party to a choice between arbitration and abandonment of the claim." Egol v. Egol, 68 N.Y.2d 893, 896 (1986) (citing Matter of Elliot v. City of Binghamton, 94 A.D.2d 887, aff'd 61 N.Y.2d 920; Bonnor v. Congress of Ind. Unions, 331 F.2d 355, 359). Thus, a conflict exists between New Jersey and New York law. Another reason that further analysis is warranted here.

Moving to prong two of the governmental interest standard, the court is required to analyze the qualitative nature of each state's contacts. Here, it appears that all of the contacts associated with this matter are grounded in New Jersey. Indeed, the only nexus to New Jersey evident in the record, is that MISICOM is headquartered in New York. More importantly, for the reasons set forth in the text of this opinion, New Jersey policies related to the rights to a jury trial are critical to the case.

6

agreed to arbitrate arbitrability.'" Id. (alterations in original) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920). "Silence or ambiguity in an agreement does not overcome the presumption that a court decides arbitrability." Id. at 1178.

In interpreting arbitration agreements, New Jersey courts have typically relied on basic contract principles. Singer v. Commodities Corp. (U.S.A.), 292 N.J. Super. 391, 402 (App. Div. 1996). Generally, parties are free to contract terms of their own choosing. Marchak v. Claridge Commons Inc., 134 N.J. 275, 281 (1993). A contract must be enforced in accordance with the express written terms of the contract itself, which evidences the parties' intention to enter into an agreement. Statewide Realty Company v. Fidelity Management and Research Company, Inc., 259 N.J. Super. 59, 68 (1992). When presented with a contract whose terms are clear and unambiguous, the Court must enforce the terms as written, and extrinsic evidence outside the agreement may not be considered. Ibid. Nor may the Court create a better contract for the parties than they themselves have seen fit to enter into, or to alter it for the benefit of one party and to the detriment of the other. Karl's Sales & Service, 249 N.J. Super. 487, 493 (1991). When examining a contract and determining whether to compel arbitration in a specific matter, the court must decide first whether there is a valid agreement to arbitrate, and second, whether the dispute at issue falls within the scope of that agreement. PaineWebber, Inc. v. Harmann, 921 F.2d 507, 511 (3d Cir. 1990). [2]

To cover a statutory right under New Jersey law, an arbitration clause must do three things. First, it must identify the general substantive area that the arbitration clause covers: "To pass muster, however, a waiver-of-rights provision should at least provide that the employee agrees to arbitrate all statutory claims arising out of the employment relationship or its termination." Garfinkel v. Morristown Obstetrics & Gynecology Assocs., 168 N.J. 124 (2001); see also Atalese v. U.S. Legal Servs. Grp., 219 N.J. 430, 445 (2014)("But the clause, at least in some general and sufficiently broad way, must explain that the plaintiff is giving up her right to bring her claims in

---

[2] That said, an agreement to arbitrate must be the product of mutual assent, as determined under customary principles of contract law. See N.J.S.A. 2A:23B-6; Muhammad, supra, 189 N.J. at 15. There must be, as our cases instruct, a "meeting of the minds." See, e.g., Pinto v. Spectrum Chems. & Lab. Prods., 200 N.J. 580, 600, (2010) (upholding the trial court's ruling that a settlement agreement was unenforceable "because the parties never had a meeting of the minds on the precise terms of the agreement"); Morton v. 4 Orchard Land Trust, 180 N.J. 118, 120 (2004) (declining to enforce a sale agreement where the contract was missing the "essential element" of "a meeting of the minds on the terms of the agreement"). Consequently, the clarity and internal consistency of a contract's arbitration provisions are important factors in determining whether a party reasonably understood those provisions and agreed to be bound by them.

court or have a jury resolve the dispute."); <u>Martindale v. Sandvik, Inc.</u>, 173 N.J. 76 (2002) ("In the circumstances of this case, the language in the arbitration agreement not only was clear and unambiguous, it was also sufficiently broad to encompass reasonably plaintiff's statutory causes of action.").

Second, it must reference the types of claims waived by the provision: "It should also reflect the employee's general understanding of the type of claims included in the waiver, *e.g.,* workplace discrimination claims." <u>Garfinkel v. Morristown Obstetrics & Gynecology Assocs.</u>, 168 N.J. 124, 135  (2001).  It need not, however, mention the specific statutory rights at issue: "We do not suggest that the arbitration clause has to identify the specific constitutional or statutory right guaranteeing a citizen access to the courts that is waived by agreeing to arbitration." <u>Atalese v. U.S. Legal Servs. Grp.</u>, 219 N.J. 430, 447 (2014).

Third, it must specifically explain the difference between arbitration and litigation: "The waiver-of-rights language, however, must be clear and unambiguous — that is, the parties must know that there is a distinction between resolving a dispute in arbitration and in a judicial forum." <u>Id</u>. at 315; <u>see also</u> <u>Martindale v. Sandvik, Inc.</u>, 173 N.J. 76, 96 (2002);  (enforcing an arbitration clause because it, *inter alia,* "addressed specifically a waiver of the right to a jury trial, augmenting the notice to all parties to the agreement that claims involving jury trials would be resolved instead through arbitration").

The Supreme Court of New Jersey has interpreted three arbitration clauses to determine whether they covered a particular type of statutory claim. In two of these cases, <u>Garfinkel</u> and <u>Atalese</u>, the court found that the arbitration clause did not cover the plaintiff's statutory claims. In the other, *Martindale,* the Supreme Court of New Jersey came to the opposite conclusion. The case at bar resembles <u>Garfinkel</u> and <u>Atalese</u> more than <u>Martindale</u>. As a result, the court concludes here that the arbitration clause does not cover Plaintiff's wage-and-hour or age discrimination claims.

In <u>Garfinkel</u>, a doctor employed by the Morristown Obstetrics and Gynecology Associates ("MOGA") sued MOGA for breaching an employment contract, for perpetrating a tort, and for violating the New Jersey Law Against Discrimination ("LAD"). <u>Garfinkel v. Morristown Obstetrics & Gynecology Assocs.</u>, 168 N.J. 124  (2001).  In response to the doctor's suit, MOGA invoked the following arbitration clause:

> Except as otherwise expressly set forth in Paragraphs 14 or 15 hereof, any controversy or claim arising out of, or relating to, this Agreement or the breach thereof, shall be settled by arbitration in Morristown, New Jersey, in accordance with the rules then obtaining of the

8

American Arbitration Association, and judgement [sic] upon any reward rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof.

[Id.].

The Supreme Court of New Jersey found that the arbitration clause did not cover the doctor's statutory claims for three reasons. First, the clause did not reference statutory claims: "Moreover, the language does not mention, either expressly or by general reference, statutory claims redressable by the LAD." Id at 672. Second, the clause implicitly exempted all other statutory claims by explicitly exempting some: "As noted, paragraph eighteen excepts from its purview the two paragraphs of the agreement pertaining to post-termination restrictions and severance pay. Those exceptions further suggest that the parties intended disputes over the terms and conditions of the contract, not statutory claims, to be the subject of arbitration." Id.  Third, the clause mentioned contract disputes: "The clause states that `any controversy or claim' that arises from the agreement or its breach shall be settled by arbitration. That language suggests that the parties intended to arbitrate only those disputes involving a contract term, a condition of employment, or some other element of the contract itself." Id.

In Atalese, a customer sued a debt-adjustment services company in New Jersey court for violating New Jersey's Consumer Fraud Act and the Truth-in-Consumer Contract, Warranty and Notice Act. The company responded by invoking the following arbitration clause of its service agreement:

> In the event of any claim or dispute between Client and the USLSG related to this Agreement or related to any performance of any services related to this Agreement, the claim or dispute shall be submitted to binding arbitration upon the request of either party upon the service of that request on the other party.

[Atalese v. U.S. Legal Servs. Grp., 219 N.J. 430, 437 (2014)].

The Supreme Court of New Jersey found that the consumer had not waived her statutory rights by signing this arbitration provision because "the wording of the service agreement did not clearly and unambiguously signal to plaintiff that she was surrendering her right to pursue her statutory claims in court." Id. at 316.

In Martindale, an employee sued her employer under New Jersey's Family Leave Act and New Jersey's Law Against Discrimination. In response to suit, her employer invoked an arbitration clause contained in an employment application. The clause read as follows:

9

> As a condition of my employment, I agree to waive my right to a jury trial in any action or proceeding related to my employment with [the Employer]. I understand that I am waiving my right to a jury trial voluntarily and knowingly, and free from duress or coercion."

[Martindale v. Sandvik, Inc., 173 N.J. 76, 81 (2002) (capitalization omitted)].

The Supreme Court of New Jersey found that the arbitration clause covered the employee's claims for two reasons. First, the contract was sufficiently broad because, unlike in Garfinkel and other cases, it did not make a limiting reference to a contract: "Unlike the arbitration provisions contained in Garfinkel and Alamo, the arbitration provision here does not contain any limiting references." Id. at 96. Second, the Court concluded that the arbitration provision was appropriately clear because it specifically referenced the type of claims covered: "Its wording provided plaintiff with sufficient notice at the time she signed the agreement that all claims relating to employment with and termination from [the Employer] would be resolved through arbitration." Id.

The New Jersey Constitution guarantees the right to a civil jury trial. N.J. Const. Art., I, ¶ 9. Our state-law jurisprudence makes clear "that when a contract contains a waiver of rights—whether in an arbitration or other clause—the waiver 'must be clearly and unmistakably established.'" Atalese v. U.S. Legal Servs. Grp., 219 N.J. 430, 443 (2014). Under state contract law, no greater burden is placed on an arbitration agreement than other agreements waiving constitutional or statutory rights. Id. (collecting non-arbitration-clause cases requiring clear and unambiguous contractual language to achieve waiver of rights).

It is very clear that no "magical language" is required to accomplish a waiver of rights in an arbitration agreement. New Jersey has upheld arbitration clauses that have explained in various, simple ways, "that arbitration is a waiver of the right to bring suit in a judicial forum." Id. at 444. See also Martindale, supra 173 N.J. at 81–82 (2002) (upholding arbitration clause stating that "all disputes relating to [the party's] employment ... shall be decided by an arbitrator" and that party "waiv[ed] [her] right to a jury trial"); Curtis v. Cellco P'ship, 413 N.J.Super. 26, 31 (App. Div.), certif. denied, 203 N.J. 94, (2010) (upholding arbitration agreement, which stated that parties "agree to settle disputes ... only by arbitration" and not by "suing in court" and explained that "rules in arbitration are different," "no judge or jury" is present, and "review is limited"); Griffin v. Burlington Volkswagen, Inc., 411 N.J.Super. 515, 518 (App. Div. 2010) (enforcing arbitration clause stating that parties, by agreeing to arbitration, waived "their rights to maintain other

10

available resolution processes, such as a court action or administrative proceeding, to settle their disputes.").

In the court's opinion, the Agreement's arbitration provision falls far short of what is required to satisfy the existing New Jersey precedent.  It does not explain that Plaintiff is waiving his right to seek relief in Court. The Arbitration Provision states that:

> "Any dispute with respect to this Agreement shall be decided by arbitration in the City of New York, in accordance with the rules of the American Arbitration Association as then in force by on arbitrator appointed in accordance with such rule... The arbitrator's award shall be final, conclusive and binding on the parties, and shall be the exclusive remedy regarding any claims, counterclaims, issues or accounting presented or pled to the arbitrator."

[See § VII (D) of the Employment Agreement, Def.'s Exhibit B].

As such, the court has concluded that this provision lacks clear and unequivocal language that Plaintiff is giving up his right to pursue relief in a judicial forum. In fact, the language does not even mention anything about a judicial forum, aside from the fact that "[j]udgment on the award may be entered in any court or other tribunal."  The language stating that "[a]ny dispute with respect to this Agreement" could easily be construed to be interpreted to relate to disagreements about the terms of the Agreement and nothing more.   In other words, the Agreement's Arbitration Provision failed to sufficiently express that arbitration was a substitute for having disputes and legal claims resolved before a judge or jury.

## III.   CONCLUSION

Here, the court has carefully read the language of the Agreement in light of the existing, dispositive law and has concluded that Defendants have not met their burden of demonstrating that there was a meeting of the minds and the parties agreed to arbitrate.. While the Court disagrees with Plaintiff's argument concerning the expense associated with arbitration, this Court agrees that Plaintiff did not clearly, and unambiguously, waive his right to have a jury trial resolve the dispute.

In light of the foregoing, Defendant's Notice of Motion seeking to dismiss Plaintiff's Amended Complaint and compel arbitration is hereby **DENIED**.

11

UNN L 003524-17   08/20/2018   Pg 1 of 3 Trans ID: LCV20181475709

UNION SUPERIOR COURT
CIVIL MEDIATION
1143 EAST JERSEY ST-2ND FL
ELIZABETH NJ 07201

DATE AUGUST 20, 2018

**FILED**

**AUG 23 2018**

MARK P. CIARROCCA
P.J.Cv.

KENNETH A. WALLACH
LAW OFFICES
160 SOUTH LIVINGSTON AVENUE
WINDSOR PLAZA   SUITE 208
LIVINGSTON                NJ   070390000

NETHING ROBERT VS MERCK & CO.
DOCKET L  003524 17
DEAR SIR OR MADAM:

     PURSUANT TO THE ORDER OF REFERRAL TO MEDIATION (COPY ATTACHED), YOU HAVE BEEN
DESIGNATED AS A MEDIATOR IN THE ABOVE CAPTIONED CASE IN THE EVENT THAT THE PARTIES
DO NOT SELECT ANOTHER MEDIATOR OF THEIR CHOICE WITHIN 14 DAYS.  IF THE LEAD
PLAINTIFF IN THE ABOVE MATTER HAS NOT CONTACTED YOU WITHIN 18 DAYS OF THE ENTRY OF
THE ORDER, YOU WILL SERVE AS THE MEDIATOR IN THE ABOVE MATTER.  IF THERE IS A
CONFLICT  PLEASE NOTIFY RHONDA WATTS AT (908) 659-3270 IMMEDIATELY.
PLEASE NOTE THAT PURSUANT TO THE ATTACHED ORDER, YOU SHALL HOLD A TELEPHONIC
CONFERENCE WITH COUNSEL WITHIN 35 DAYS OF THE DATE OF THE ENCLOSED ORDER AND ON
5 DAY'S ADVANCE NOTICE TO THE PARTIES.  IN ACCORDANCE WITH APPENDIX XXVI OF THE
RULES CF COURT, AT THE BEGINNING OF THE INITIAL IN-PERSON MEDIATION SESSION, YOU
SHALL DISCLOSE TO THE PARTIES IN WRITING ON A FORM PRESCRIBED BY THE ADMINISTRATIVE
DIRECTOR OF THE COURTS THE SPECIFIC TIME AT WHICH THE FREE MEDIATION WILL CONCLUDE.
THE WRITTEN DISCLOSURE SHALL ADVISE THE PARTIES THAT ANY MEDIATION CONTINUED
BEYOND THAT TIME WILL BE BILLED BY YOU AT YOUR MARKET RATE AS SET FORTH ON THE
COURT'S MEDIATOR ROSTER.  THE WRITING SHALL ALSO DISCLOSE THE AMOUNT OF
PREPARATION TIME YOU HAVE SPENT TO THAT POINT ON THE CASE.  IF THE AMOUNT OF
PREPARATION TIME BY YOU EXCEEDS ONE HOUR AND IF YOU INTEND TO CHARGE THE PARTIES
FOR THAT ADDITIONAL PREPARATION TIME BEYOND THE ONE FREE HOUR IN ACCORDANCE WITH
GUIDELINE 15 SHOULD THEY AGREE TO CONTINUE WITH MEDIATION ON A PAYING BASIS, THEN
IN THAT WRITTEN DISCLOSURE YOU MUST SO ADVISE THE PARTIES PRIOR TO COMMENCING
THE INITIAL MEDIATION SESSION.  ANY SUCH CHARGED ADDITIONAL PREPARATION TIME WILL
BE BILLED BY YOU AT YOUR MARKET RATE AS SET FORTH ON THE COURT'S MEDIATOR ROSTER.
THE FORM OF THE DISCLOSURE IS FOUND AT NJCOURTS.COM UNDER CIVIL MEDIATION
RESOURCES.  PLEASE NOTIFY RHONDA WATTS IMMEDIATELY UPON THE SETTLEMENT
OR UPON UNSUCCESSFUL COMPLETION OF THE MEDIATION OF THIS CASE AND SUBMIT A
COMPLETION OF MEDIATION FORM.  THE FORM MAY ALSO BE FOUND AT NJCOURTS.COM
UNDER CIVIL MEDIATION RESOURCES.

     IF YOU HAVE ANY QUESTIONS, PLEASE FEEL FREE TO CALL THE MEDIATOR FACILITATING
COMMITTEE.  INFORMATION REGARDING THE MEDIATOR FACILITATING COMMITTEE CAN BE
FOUND AT NJCOURTS.COM, CIVIL MEDIATION RESOURCES.  THANK YOU FOR YOUR WILLINGNESS
TO SERVE IN THIS VERY IMPORTANT PROGRAM.

                                        VERY TRULY YOURS,

                                        CIVIL PRESIDING JUDGE

                                        HON. MARK P. CIARROCCA, P.J.Cv.

ENC.

**FILED**

**AUG 23 2018**

**MARK P. CIARROCCA**
**P.J.Cv.**

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION, CIVIL PART
UNION SUPERIOR COURT
DOCKET NO.L  003524 17

NETHING ROBERT  VS MERCK & CO.

CIVIL ACTION
MEDIATION REFERRAL ORDER
(NO STAY OF DISCOVERY)

PURSUANT TO R. 1:40-1 ET SEQ., IT IS ON THIS     TWENTIETH    DAY OF
AUGUST   2018, ORDERED THAT:

1. THE PARTIES AND ATTORNEYS SHALL PARTICIPATE IN MEDIATION IN GOOD FAITH AND
   WITH A SENSE OF URGENCY.  FAILURE TO DO SO MAY RESULT IN AN ASSESSMENT OF
   COSTS OR OTHER CONSEQUENCES.

                    REGARDING THE MEDIATOR SELECTION

2A. PARTIES MAY SELECT A MEDIATOR WITHIN 14 DAYS.  IF THE PARTIES DESIGNATE A
    "PARTY SELECTED MEDIATOR" WITHIN 14 DAYS OF THE ENTRY OF THIS ORDER, LEAD
    PLAINTIFF'S COUNSEL SHALL PROVIDE TO THE CDR POINT PERSON AND THE INDIVIDUAL
    NAMED IN PARAGRAPH 2B BELOW, IN WRITING, THE NAME, ADDRESS, TELEPHONE AND
    E-MAIL ADDRESS OF THE SELECTED MEDIATOR (FAX OR E-MAIL IS ACCEPTABLE).
    NAMES AND ADDRESSES OF THE CDR POINT PERSON MAY BE FOUND AT NJCOURTS.COM
    UNDER CIVIL MEDIATION RESOURCES.

2B. KENNETH A. WALLACH      (973) 994-7901  IS APPOINTED TO MEDIATE IF
    PARTIES DO NOT TIMELY DESIGNATE A PARTY SELECTED MEDIATOR.  INFORMATION
    REGARDING THE APPOINTED MEDIATOR MAY BE OBTAINED AT NJCOURTS.COM, CIVIL
    MEDIATION RESOURCES, UNDER CIVIL MEDIATOR SEARCH.

                    REGARDING THE MEDIATION PROCESS

3A. THE MEDIATOR SHALL NOTIFY COUNSEL OF THE DATE AND TIME FOR AN ORGANIZATIONAL
    CONFERENCE CALL TO BE CONDUCTED WITHIN 35 DAYS OF THIS ORDER.  THE MEDIATOR
    SHALL EXPLAIN THE MEDIATION PROCESS, SET GROUND RULES, FACILITATE FOCUSED
    INFORMATION EXCHANGE, AND IDENTIFY THOSE PERSONS WITH NEGOTIATING AUTHORITY
    NEEDED BY EACH SIDE TO PARTICIPATE IN THE MEDIATION PROCESS IN ORDER TO
    ASSIST IN EFFECTUATING A RESOLUTION OF THE CASE.  IN CONSULTATION WITH
    COUNSEL, THE MEDIATOR SHALL SCHEDULE THE MEDIATION SESSION AND MAY REQUIRE
    THE ATTENDANCE OF THE PERSON(S) WITH AUTHORITY.    .

3B. FAILURE TO PARTICIPATE IN THE CONFERENCE CALL OR ATTEND THE FIRST MEDIATION
    SESSION MAY RESULT IN AN ASSESSMENT OF COSTS OR OTHER CONSEQUENCES PURSUANT
    TO R. 1:2-4(A).

3C. ANY PARTY MAY WITHDRAW FROM THE MEDIATION PROCESS AFTER THE EXPIRATION OF
    THE INITIAL ONE-HOUR IN-PERSON MEDIATION SESSION.  WITHDRAWAL OF ONE OR MORE
    PARTIES FROM THE MEDIATION SHALL NOT PREVENT THE REMAINING PARTIES FROM
    CONTINUING WITH MEDIATION.

3D. LEAD PLAINTIFF'S COUNSEL SHALL BE RESPONSIBLE FOR PROVIDING THE MEDIATOR
    WITH AN UPDATED PARTY/COUNSEL LIST.

3E. THIS REFERRAL TO MEDIATION DOES NOT STAY DISCOVERY.  MEDIATION UNDER THIS
    ORDER SHALL BE COMPLETED BY THE DISCOVERY END DATE.

                    REGARDING MEDIATOR COMPENSATION

4. COMPENSATION OF PARTY-SELECTED OR COURT-DESIGNATED MEDIATORS SHALL BE
   HANDLED IN ACCORDANCE WITH THE "GUIDELINES FOR THE COMPENSATION OF
   MEDIATORS" CONTAINED IN APPENDIX XXVI OF THE RULES OF COURT.  MEDIATORS ON
   THE ROSTER, WHETHER PARTY-SELECTED OR COURT-DESIGNATED, SHALL SERVE WITHOUT
   COMPENSATION FOR THE FIRST TWO HOURS, WHICH SHALL INCLUDE A MANDATORY
   ORGANIZATIONAL TELEPHONE CONFERENCE WITH COUNSEL AND PRO SE PARTIES AND AN
   IN-PERSON MEDIATION SESSION OF AT LEAST ONE HOUR.  THE PARTIES MAY SELECT
   ANY MEDIATOR NOT ON THE ROSTER OF MEDIATORS AND SUCH NON-ROSTER MEDIATOR MAY
   NEGOTIATE A FEE WITH THE PARTIES, BUT IS BOUND BY ALL OTHER TERMS AND
   CONDITIONS OF THIS ORDER AND THE COURT'S MEDIATION PROCEDURES.

5. ANY INQUIRY REGARDING THE MEDIATION PROCESS OR THIS ORDER SHALL BE RESOLVED
   BY THE MEDIATOR IN COLLABORATION WITH THE MEDIATOR FACILITATING COMMITTEE
   IDENTIFIED AT:http://njcourts.gov/courts/assets/civil/medmentcommlist.pdf.

                                                    J.S.C.

C:  COURT DESIGNATED MEDIATOR

**HON. MARK P. CIARROCCA, P.J.CV.**

COUNSEL & PARTY LIST
NETHING ROBERT  VS MERCK & CO.
   (L   003524 17)

KENNETH A. WALLACH
LAW OFFICES
160 SOUTH LIVINGSTON AVENUE,
LIVINGSTON        NJ 070390000
(973) 994-7901

| PARTY NAME | | ATTORNEY | ADDRESS/TELEPHONE # |
|---|---|---|---|
| ROBERT NETHING | (PF) | MICHAEL R. DI CHIARA | ONE DEPOT SQUARE |
| | | KRAKOWER DI CHIARA LLC | 77 MARKET ST STE 2 |
| | | | PARK RIDGE      NJ 076560000 |
| | | | (201) 746-6334 |
| MERCK & CO. INC | (DF) | MELISSA A. PROVOST | 600 CAMPUS DRIVE |
| | | DRINKER BIDDLE & REATH LL | FLORHAM PARK    NJ 079321047 |
| | | | (973) 549-7000 |
| NTT DATA, INC. | (DF) | ANNE B. SEKEL | 90 PARK AVE 36TH FL |
| | | FOLEY AND LARDNER, LLP | NEW YORK        NY 100160000 |
| | | | (212) 682-7474 |
| MISICOM INC | (DF) | NO ATTORNEY | |
| | | | 000000000 |

Michael R. DiChiara (NJ ID # 010021998)
Krakower DiChiara LLC
77 Market Street, Suite 2
Park Ridge, NJ 07656
Telephone: 201-746-0303
Fax: 866-417-2333

*Attorneys for Plaintiff*
-------------------------------------------------------x

ROBERT NETHING,

|  |  |
|---|---|
| Plaintiff, | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: UNION COUNTY |

-against-

DOCKET NO.: UNN-L- 3524-17

MERCK & CO., INC. NTT DATA, INC., and
MISICOM, INC.,

Defendant.
-------------------------------------------------------x

TO:    Thomas J. Barton (ID No. 008211991)
       Drinker Biddle & Reath LLP
       105 College Road East, Suite 300
       P.O. Box 627
       Princeton, NJ   08542-0627

       Anne B. Sekel, Esq. (N.J. Bar No. 038842005)
       FOLEY & LARDNER LLP
       90 Park Avenue
       New York, NY 10016

PLEASE TAKE NOTICE that the undersigned, counsel for Plaintiff, pursuant to R. 4:9, shall apply to the Superior Court of New Jersey, Law Division, Union County, on May 24, 2019 at 9:00 in the forenoon, or as soon thereafter as counsel may be heard, for entry of an Order Granting Plaintiff's Motion for Leave to File a Second Amended Complaint.

PLEASE TAKE FURTHER NOTICE that Plaintiff shall rely upon the accompanying Memorandum of Law;

PLEASE TAKE FURTHER NOTICE that oral argument is not requested unless timely opposition to this application is filed; and,

PLEASE TAKE FURTHER NOTICE that a proposed form of Order is submitted herewith.

Respectfully Submitted,

KRAKOWER DICHIARA LLC
Attorneys for Plaintiff


By: *Michael R. DiChiara*
    MICHAEL R. DICHIARA

Dated:  May 3, 2019

Michael DiChiara, Esq.
DiChiara Law Firm LLC
33 Plymouth Street, Suite 202B,
Montclair, NJ  07042
Telephone: (973) 509-8500
Fax: 866-417-2333
*Attorney for Plaintiff*

------------------------------------------------------x

ROBERT NETHING,

                           Plaintiff,

           -against-

MERCK & CO., INC., NTT DATA, INC., and
MISICOM, INC.

                      Defendants.

------------------------------------------------------x

**SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: UNION COUNTY**

**DOCKET NO. UNN-L-03524-17**

**[proposed] ORDER FOR LEAVE TO
FILE SECOND AMENDED
COMPLAINT**

     **THIS MATTER** having been opened to the Court upon the Motion of Plaintiff, for an

Order for Leave to File an Amended Complaint,

     **IT IS** on this _____ day of _____, 2019;

     **ORDERED** that Plaintiff's Motion for Leave to File a Second Amended Complaint, is

hereby granted; and it is further,

     **ORDERED** that the Second Amended Complaint will relate back to the date the

original complaint was filed, which was October 3, 2017;

     **ORDERED** that Plaintiff may file the Second Amended Complaint within ten (10) days

of the date of this Order; and it is further

1

**ORDERED** that a copy of this order shall be served upon all parties within seven (7)

days of the date of receipt by the moving party.

_____ Opposed

_____ Unopposed

_____
J.S.C.

Michael DiChiara, Esq.
Krakower DiChiara LLC
77 Market Street, Suite 2
Park Ridge, NJ 07656
Telephone: (201) 746-0303
Fax: 866-417-2333
*Attorney for Plaintiff*

------------------------------------------------------x

ROBERT NETHING,                                    SUPERIOR COURT OF NEW JERSEY
                                                   LAW DIVISION: UNION COUNTY
                              Plaintiff,
                                                   DOCKET NO. UNN-L-03524-17

              -against-

MERCK & CO., INC., NTT DATA, INC., and
MISICOM, INC.

                    Defendants
------------------------------------------------------x

## PLAINTIFF'S MEMORANUDM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMEND COMPLAINT

### PRELIMINARY STATEMENT

Plaintiff initiated this action on October 3, 2017, asserting claims of failure to pay wages in violation of the New Jersey Wage Payment Laws and New Jersey Wage and Hour Laws. Plaintiff makes this motion for leave to amend the Complaint to include a claim for unpaid overtime wages in violation of the Fair Labor Standards Act.

Plaintiff's proposed amendments are derived from the same facts already asserted in the original filing: the non-payment of wages for hours worked. Though Plaintiff filed this matter on October 3, 2017, litigation is still in the preliminary stages, and Plaintiff has yet to receive complete discovery responses from all Defendants. Moreover, no depositions have taken place. Accordingly, as Defendants would not be prejudiced by the proposed amendments and the proposed amendments would not be futile, Plaintiff's motion for leave to file an amended

1

complaint should be granted in its entirety. Further, because Plaintiff's proposed amendments arise out of the same conduct already alleged in the complaint, Plaintiff's proposed amendments should relate back to the date of the original filing.

## LEGAL ARGUMENT

Pursuant to New Jersey Rule 4:9-1, leave to amend a Complaint "shall be freely given in the interest of justice." The Supreme Court has made clear that "Rule 4:9-1 requires that motions for leave to amend be granted liberally" and that "the granting of a motion to file an amended complaint always rests in the court's sound discretion." *Kernan v. One Washington Park Urban Renewal Assocs.*, 154 N.J. 437, 456-57 (1998).

### I. Plaintiff's Motion to Amend the Complaint Should Be Granted.

Courts utilize a two-step process when determining whether to grant a motion to amend: "whether the non-moving party will be prejudiced, and whether granting the amendment would nonetheless be futile". *Notte v. Merchants Mut. Ins. Co.*, 185 N.J. 490, 501 (N.J. 2006). Here, Defendants would not be prejudiced should the Court grant Plaintiff's motion. Further, Plaintiff's claims pursuant to the FLSA are valid and, therefore, the amendments would not be futile. Accordingly, Plaintiff's motion to amend the Complaint should be granted in its entirety.

### A. Granting Plaintiff Leave to File the Amended Complaint Would Not Prejudice Defendants.

The first inquiry courts made in decided whether to grant a motion to amend pleadings is whether the proposed amendments would prejudice the opposing party. *Notte*, 185 N.J. at 501. Courts regularly find no prejudice where, as here, the late assertion of claims against defendants is "grounded on the same conduct already alleged in the complaint." *Id.* Notably, the proposed amendments rely on the exact same facts as those already asserted: namely, that Plaintiff worked a significant number of unpaid hours. Though the proposed amendments include relief for

2

overtime payment, the primary inquiry into the number of hours actually worked by Plaintiff remains the same. Further, the parties are still engaged in discovery and have not yet scheduled depositions. Should Defendants find additional information necessary from Plaintiff related to the proposed amendments before scheduling his deposition, Defendants may request such information from Plaintiff. Accordingly, given that the proposed amendments relate to the original claims and given the current stage of litigation, Defendants would not be prejudiced should the Court grant Plaintiff leave to file the proposed Second Amended Complaint.

      B.  <u>Plaintiff's Proposed Amendments Would Not Be Futile.</u>

Here, Plaintiff's proposed amendments would not be futile. An amendment is futile where "the amended claim will nonetheless fail and, hence, allowing the amendment would be a useless endeavor." *Notte*, 185 N.J. at 501. Motions to amend are determined "without consideration of the ultimate merits of the amendment." *Interchange State Bank v. Rinaldi*, 303 N.J. Super. 239, 256, (App. Div.1997) (citing *City Check Cashing v. Nat'l State Bank*, 244 N.J. Super. 304, 308-09, (App. Div.), *certif. denied*, 122 N.J. 389, (1990). However, courts may still "refuse leave to amend when the newly asserted claim is not sustainable as a matter of law." *Id.* at 256-57 (citing *Mustilli v. Mustilli*, 287 N.J. Super. 605, 607, (Ch. Div. 1995)).

Plaintiff's proposed amendments are sustainable as a matter of law and, accordingly, would not be futile. Here, Plaintiff's proposed amendments assert that, throughout his employment, Plaintiff worked in excess of forty hours without being properly compensated overtime for those hours. As Plaintiff alleges he was paid on an hourly basis, Plaintiff is entitled to overtime pursuant to the FLSA. See 20 C.F.R. §541.200(a) (exempting from overtime only employees who meet certain duties requirements *and* are paid on a salary or fee basis). Accordingly, Plaintiff's proposed amendments properly state a claim for unpaid overtime wages

3

in violation of the Fair Labor Standards Act. As such, Plaintiff's proposed amendments are not futile, and Plaintiff's motion should be granted in its entirety.

### II. Plaintiff's Claims Asserted in the Amended Complaint Should Relate Back to the Initial Filing Date of Plaintiff's Complaint.

Plaintiff's proposed amendments, which stem from the same conduct complained of in the original Complaint, should relate back to the date of the original filing, October 3, 2017. The New Jersey Court Rules permit amendments to relate back to the date of of an original pleading "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading." N.J. Court Rules, R. 4:9-3. A claim arises out of the "conduct, transaction, or occurrence" asserted in a prior pleading when it "constitutes the same matter more fully or differently laid, or [when] the gist of the action or the basic subject of the controversy remains the same." *Notte*, 185 N.J. at 498 (quoting *Harr v. Allstate Ins. Co.*, 54 N.J. 287, 299 (1969)). The courts are to construe Rule 4:9-3 liberally. *Harr*, 54, N.J. at 299.

Notably, "[t]he plain and explicit language of *Rule* 4:9-3 requires only that the amended claim relate back to the underlying transaction or facts alleged in the original pleading, and not to technically asserted discrete claims or counts." *Notte*, 185 N.J. at 498. Indeed, courts in New Jersey have consistently held that "[u]nlike a new or different claim, where relation-back is a matter within the court's discretion, if the permitted amendment asserts a germane claim, that is one arising out of facts set forth in the original pleading, it is entitled to relation-back." *Id.* at 497 (citing *Harr*, 54 N.J. at 287; *Wimmer v. Coombs,* 198 *N.J.Super.* 184, 187 (App.Div.1985)). The relation-back rule exists because a defendant who has timely notice of the conduct alleged to be wrongful is not prejudiced by the late assertion of other claims attributable to the same conduct already alleged in the complaint. *Notte,* 185 N.J. at 497.

Here, Plaintiff's proposed FLSA claim relates back to actions alleged in his original complaint – the non-payment of wages for hours worked. *See* Complaint at ¶ 39-44; Proposed Amended Complaint at ¶ 42-48. In circumstances such as those present here, where the proposed amended complaint constitutes "the same matter more fully or differently laid, or the gist of the action or the basic subject of the controversy remains the same, it should be readily allowed and the doctrine of relation back applied." *See Notte*, 185 N.J. at 499. Further, "it should make no difference whether the original pleading sounded in tort, contract or equity, or whether the proposed amendment related to the original or different basis of action." *Id.* (holding that amended complaint adding common law wrongful discharge and LAD claims to original CEPA claim relates back to date original complaint filed). Thus, based on the Court's holding in *Notte* and the undisputed fact that Plaintiff's FLSA claim arises from the same actions that gave rise to Plaintiff's original NJWHL claim -- the non-payment of wages -- Plaintiff's motion should be granted in its entirety.

## CONCLUSION

Wherefore, for the reasons set forth above and in Plaintiff's moving papers, the Court should grant Plaintiff's Motion for Leave to Amend in its entirety and enter an Order that the amended complaint relates back to the date of the original complaint.

Respectfully Submitted,

KRAKOWER DICHIARA LLC
Attorneys for Plaintiff


By: *Michael R. DiChiara*
MICHAEL R. DICHIARA

Dated: May 3, 2019

5

Michael R. DiChiara (NJ ID # 010021998)
Krakower DiChiara LLC
77 Market Street, Suite 2
Park Ridge, NJ 07656
Telephone: 201-746-0303
Fax: 866-417-2333

*Attorneys for Plaintiff*

--------------------------------------------------------x

ROBERT NETHING,

                           Plaintiff,

            -against-

MERCK & CO., INC., NTT DATA, INC., and
MISICOM, INC.

                     Defendants.

--------------------------------------------------------x

                              SUPERIOR COURT OF NEW JERSEY
                              LAW DIVISION: UNION COUNTY

                              [proposed]

                              Second Amended Complaint

                              UNN-L-03524-17

Plaintiff ROBERT NETHING, by and through his attorneys, upon personal knowledge as to himself and upon information and belief as to other matters, brings this Complaint against Defendant MERCK & CO., INC. ("Merck"), Defendant NTT DATA, INC. ("NTT"), and Defendant Misicom, Inc. ("Misicom") and alleges as follows:

## INTRODUCTION

    1.    Plaintiff brings this lawsuit seeking recovery against Defendants for violations of the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a *et seq.*; the New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. § 34:11-4.1; the Fair Labor Standards Act ("FLSA") 29 U.S.C. §201 *et seq.* ; and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -49 ("NJLAD").

1

2.      Plaintiff seeks economic, compensatory, liquidated damages, attorneys' fees, punitive damages, and other appropriate legal and equitable relief pursuant to state law.

## PARTIES

### Defendant Merck & Co., Inc.

3.      All actions and omissions described in this Complaint were made by Defendant Merck directly and/or through Defendant Merck's supervisory employees and agents.

4.      Defendant Merck's actions and omissions described in this Complaint and causing injury to Plaintiff were done knowingly and willfully.

5.      Defendant Merck is a domestic profit corporation organized under the laws of New Jersey and doing business in the State of New Jersey, and within Union County, as a healthcare company.

6.      Defendant Merck maintains a principle business address, a main business address, and executive offices at 2000 Galloping Hill Road, Kenilworth, New Jersey, in Union County.

7.      At all times relevant to this Complaint Defendant Merck was and is an employer within the meaning of the NJWHL, N.J.S.A. 34:11-56a1(g), and employed employees, including Plaintiff.

8.      At all times relevant to this Complaint, Defendant Merck has been and is an employer as that term is defined by NJLAD, N.J.S.A. 10:5-5(e).

9.      At all times relevant to this Complaint, Defendant Merck has been and is an employer as that term is defined by FLSA.

### Defendant NTT Data, Inc.

10.     All actions and omissions described in this Complaint were made by Defendant

2

NTT directly and/or through Defendant NTT's supervisory employees and agents.

11.    Defendant NTT's actions and omissions described in this Complaint and causing injury to Plaintiff were done knowingly and willfully.

12.    Defendant NTT is a foreign profit corporation organized under the laws of Massachusetts and doing business in the State of New Jersey, and within Middlesex County.

13.    Defendant NTT maintains a principle business address, a main business address, and executive offices at 100 City Square, Boston, MA 02129.

14.    Defendant NTT maintains a business within New Jersey at: 90 Woodbridge Ctr Drive, Suite 410, Woodbridge, NJ 07095.

15.    At all times relevant to this Complaint Defendant NTT was and is an employer within the meaning of the NJWHL, N.J.S.A. 34:11-56a1(g), and employed employees, including Plaintiff.

16.    At all times relevant to this Complaint, Defendant NTT has been and is an employer as that term is defined by NJLAD, N.J.S.A. 10:5-5(e).

17.    At all times relevant to this Complaint, Defendant NTT has been and is an employer as that term is defined by FLSA.

**Defendant Misicom**

18.    All actions and omissions described in this Complaint were made by Defendant Misicom directly and/or through Defendant Misicom's supervisory employees and agents.

19.    Defendant Misicom's actions and omissions described in this Complaint and causing injury to Plaintiff were done knowingly and willfully.

20.    Defendant Misicom is a foreign profit corporation organized under the laws of California and doing business in the State of New Jersey, and within Middlesex County.

3

21.     Defendant Misicom maintains a business within New Jersey at: 90 Woodbridge Ctr Drive, Suite 410, Woodbridge, NJ 07095.

22.     At all times relevant to this Complaint Defendant Misicom was and is an employer within the meaning of the NJWHL, N.J.S.A. 34:11-56a1(g), and employed employees, including Plaintiff.

23.     At all times relevant to this Complaint, Defendant Misicom has been and is an employer as that term is defined by NJLAD, N.J.S.A. 10:5-5(e).

24.     At all times relevant to this Complaint, Defendant Misicom has been and is an employer as that term is defined by FLSA.

**Defendants' Status as Joint Employers**

25.     At all times relevant to this Complaint, Defendant Merck, Defendant NTT, and Defendant Misicom were joint employers, and these Defendants jointly employed Plaintiff.

26.     At all times relevant to this Complaint, the Defendant Merck exercised immediate control over the promulgation of work rules and conditions of employment that Plaintiff was subjected to, including rules and conditions related to the hiring, firing, and disciplining of Plaintiff, the issuance of work assignments and instructions, and the supervision of Plaintiff's day-to-day activities.

27.     At all times relevant to this Complaint, the Defendant NTT exercised immediate control over the promulgation of work rules and conditions of employment that Plaintiff was subjected to, including rules and conditions related to the hiring, firing, and disciplining of Plaintiff, the issuance of work assignments and instructions, and the supervision of Plaintiff's day-to-day activities.

4

28.    At all times relevant to this Complaint, the Defendant Misicom exercised immediate control over the promulgation of work rules and conditions of employment that Plaintiff was subjected to, including rules and conditions related to the hiring, firing, and disciplining of Plaintiff, the issuance of work assignments and instructions, and the supervision of Plaintiff's day-to-day activities.

29.    At all times relevant to this Complaint, the Defendants exercised common control over supervision of Plaintiff.

**Plaintiff Robert Nething**

30.    At all time relevant to this action, Plaintiff was an adult resident of Hackettstown, New Jersey, in Warren County.

31.    Plaintiff is sixty-one (61) years of age.

## FACTUAL ALLEGATIONS

32.    Defendants employed Plaintiff from 2006 until March 31, 2017 when he was unlawfully terminated.

33.    Plaintiff was working for Schering Plough ("SP") in 2009 when it was acquired by Defendant Merck.

34.    When Merck acquired SP, Merck required Plaintiff to utilize one of three vendors to continue as a contract employee.

35.    Before Plaintiff chose Misicom, Misicom took Plaintiff and one other similarly situated employee to lunch in Springfield, New Jersey.

36.    Plaintiff has never been to a Misicom office.

37.    If Plaintiff needed to speak with anyone at Misicom, he would contact Misicom at the company's office in New Jersey.

5

38.     At some point during Plaintiff's employment with Defendants, NTT acquired Misicom.

39.     At all times relevant to this Complaint, Plaintiff was an employee of Defendants.

40.     At all times relevant to this Complaint Plaintiff performed his duties fully, effectively, faithfully, and efficiently.

41.     At all times relevant to this Complaint met or exceeded all reasonable business expectations as an employee within Defendants' workforce.

**Wage & Hour Violations**

42.     At all times relevant to this Complaint, Plaintiff was compensated on an hourly basis.

43.     At all times relevant to this Complaint, Defendants regularly required Plaintiff to work in excess of forty (40) hours per week.

44.     During Plaintiff's employment with Defendants, Plaintiff was required to work hours "off the clock" and was required to work hours in excess of forty (40) in a workweek without receiving wages for those hours as required by law.

45.     Defendants had actual and/or constructive knowledge that Plaintiff was working unpaid hours.

46.     In fact, Defendants directed Plaintiff to record only forty (40) hours on his timesheets regardless if he worked significantly more than forty (40) hours in a week.

47.     Throughout Plaintiff's employment, Defendants failed to pay Plaintiff for all hours worked in violation of the NJWHL and NJWPL.

48.     Defendants failed to pay Plaintiff overtime premiums for the hours he worked over forty per week, in violation of the FLSA and NJWHL.

6

**Age Discrimination**

49.     Despite Plaintiff's longevity and excellent work history, Defendants summarily terminated and/or failed to hire Plaintiff because of his age.

50.     Though Defendants purportedly considered Plaintiff an independent contractor of Defendant Merck, Defendants actually jointly employed Plaintiff.

51.     Plaintiff worked for Defendants pursuant to a series of purported independent contractor agreements for more than 10 years beginning in 2006.

52.     In October 2016, Plaintiff applied for the full-time position of Senior Specialist, Technical Analyst -- a job that he had been performing for Defendants for a number of years and for which he was eminently qualified.

53.     Plaintiff advised his supervisor, Maryellen Walter ("Walter"), that he had applied for the position and Walter responded, via email, "Happy to see this email!"

54.     Despite being qualified for the analyst position, Defendants hired a younger, less experienced person for the job.

55.     Incredibly, Defendants asked Plaintiff to train the person who was hired in his stead.

56.     Shortly thereafter, Defendants unlawfully and summarily terminated Plaintiff.

57.     Thus, after approximately eleven years of dedicated service, Defendants unlawfully terminated Plaintiff's employment.

58.     Moreover, the age discrimination to which Plaintiff was subjected was not limited to his termination.

59.     Plaintiff was also subjected to numerous discriminatory comments from management, such as "why don't you just retire?" and "you're sick a lot."

7

60.     Such comments are more evidence of the Defendants' discriminatory animus towards Plaintiff.

## FIRST CLAIM FOR RELIEF
### Violations of the NJWPL and NJWHL- Unpaid Wages
### (Against All Defendants)

61.     Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

62.     During the statute of limitations period covered by these claims, Plaintiff worked hours for which he was not paid.

63.     At all relevant times, Defendants has operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines, and rules of willfully failing and refusing to pay Plaintiff the regular hourly rate for work done in his employment.

64.     Defendants' failure to comply with the NJWPL and NJWHL caused Plaintiff to suffer loss of wages and interest thereon.

65.     Due to Defendants' violations of NJWHL, Plaintiff is entitled to recover from Defendants lost wages, including front pay and back pay, unpaid wages and interest owed on unpaid wages held by Defendants over an extended period of time, as well as reasonable attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
### AGE DISCRIMINATION IN VIOLATION OF THE NJLAD
### (Against All Defendants)

66.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

67.     At all times relevant to this Complaint Defendants were, and continue to be, employers within the meaning of the NJLAD, N.J.S.A. § 10:5-5(e) and employed employees, including Plaintiff.

68.     The NJLAD makes it unlawful to discriminate against any individual on the basis of age.

69.     Plaintiff is sixty-one (61) years old.

70.     Plaintiff was subjected to harassment and discrimination based on his age.

71.     The harassment was sufficiently severe or pervasive to materially alter the terms and conditions of Plaintiff's employment and to create a discriminatorily abusive working environment.

72.     At all times relevant to this Complaint, Defendants' discrimination against Plaintiff based on his age substantially and materially altered Plaintiff's conditions of employment in ways that were adverse to Plaintiff.

73.     Defendants discriminated against Plaintiff because of his by subjecting Plaintiff to harassment, humiliating Plaintiff, requiring Plaintiff to train his younger replacement, and, ultimately, summarily discharging Plaintiff from his employment.

74.     Defendants were aware of, or should have been aware of, and are directly and vicariously responsible for, such hostile work environment.

75.     Defendants engaged in unlawful employment practices and unlawful discriminatory as those terms are defined by the NJLAD, N.J.S.A. 10:5-12.

76.     These acts violate NJLAD and are illegal.

9

77.     In taking the above-described discriminatory actions, Defendants acted with malice and reckless indifference to Plaintiff's rights pursuant to NJLAD giving rise to punitive damages.

78.     As a direct and proximate result of Defendants' aforementioned discriminatory conduct, Plaintiff suffered monetary damages, as well as humiliation, emotional distress, mental anguish and suffering, and damage to his professional reputation.

### THIRD CLAIM FOR RELIEF
**FLSA Overtime Violations, 29 U.S.C. § 201, *et seq.***
**(Against All Defendants)**

79.     Plaintiff realleges and incorporates by reference all previous paragraphs.

80.     Throughout his employment, Plaintiff regularly worked in excess of forty (40) hours per workweek.

81.     At all relevant times, Defendants operated under common policies, plans and practices of willfully failing and refusing to pay Plaintiff at one-and-one-half times his regular rate for work in excess of forty (40) hours per workweek, and willfully failing to keep records required by the FLSA, even though the Plaintiff was entitled to overtime.

82.     At all relevant times, Defendants willfully, regularly and repeatedly failed to pay Plaintiff at the required overtime rate for hours worked in excess of forty (40) hours per workweek.

83.     Plaintiff seeks damages in the amount of his respective unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for overtime violations, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

10

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief on all Claims for Relief:

A.   Damages in an amount to be determined at trial

B.   All compensatory and economic damages;

C.   All reasonable expenses incurred by Plaintiff, including court costs and reasonable and necessary attorney fees, including attorney's fees as provided by statutes, and other relief, both in law and equity, to which Plaintiff may show herself justly entitled;

D.   Liquidated damages.

E.   All punitive and statutory damages authorized by law;

F.   Pre-judgment and post-judgment interest; and

G.   Such further relief as the Court finds just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which he has a right.

## CERTIFICATION PURSUANT TO R. 4:5-1

I certify that the matter in controversy is not subject of any other action pending in any Court or of pending arbitration proceeding presently known to the parties and no other action or arbitration is presently contemplated.

## DESIGNATION OF TRIAL COUNSEL

Plaintiff hereby designates Michael DiChiara, Esq., as trial counsel in this matter.

KRAKOWER DICHIARA LLC
Attorneys for Plaintiff

By:_____
       Michael R. DiChiara

Dated:

12

FILED

MAY 13 2019

HON. ALAN G. LESNEWICH, J.S.C.

------------------------------------------------------------X

ROBERT NETHING,

       Plaintiff,

-against-

MERCK & CO., INC., NTT DATA, INC., and
MISICOM, INC.,

       Defendants.

------------------------------------------------------------X

**SUPERIOR COURT OF
NEW JERSEY LAW DIVISION:
UNION COUNTY**

DOCKET NO.: UNN-L-003524-17

CIVIL ACTION

**STIPULATION AND CONSENT
PROTECTIVE ORDER**

It appearing that discovery in the above-captioned action is likely to involve the disclosure of confidential information, the parties hereby stipulate and agree that this Stipulation and Consent Protective Order shall govern the production, inspection, copying and disclosure of documents and information produced by plaintiff Robert Nething ("Plaintiff"), defendants Merck & Co, Inc., NTT DATA, Inc. and MISICOM, Inc. (together, "Defendants"), and non-parties including non-parties subpoenaed to produce documents or information in this lawsuit (collectively, "Third Parties"), and it is ORDERED as follows:

1.     Any party to this litigation, and any third-party, shall have the right to designate as "Confidential" and subject to this Order any information, document, or thing, or portion of any document or thing: (a) that contains trade secrets, competitively sensitive technical, marketing, financial, sales or other confidential business information, or (b) that contains private or confidential personal information, or (c) that contains information received in confidence from third parties, or (d) which the producing party otherwise believes in good faith to be entitled to protection under *R*. 4:10-3(g). Any party to this litigation or any third party covered by this Order, who produces or discloses any Confidential material, including without limitation any information, document, thing, interrogatory answer, admission, pleading, or testimony, shall mark the same with the foregoing or similar legend: "CONFIDENTIAL" or "CONFIDENTIAL — SUBJECT TO STIPULATION AND CONSENT PROTECTIVE ORDER" (hereinafter "Confidential").

2.     Any party to this litigation and any third-party shall have the right to designate as "Attorneys' Eyes Only" and subject to this Order any information, document, or thing, or portion of any document or thing that contains highly sensitive business or personal information, the disclosure of which is highly likely to cause significant harm to an individual or to the business or competitive position of the designating party. Any party to this litigation or any third party who is covered by this Order, who produces or discloses any Attorneys' Eyes Only material, including without limitation any information, document, thing, interrogatory answer, admission, pleading, or testimony, shall mark the same with the foregoing or similar legend:

"ATTORNEYS' EYES ONLY" or "ATTORNEYS' EYES ONLY - SUBJECT TO STIPULATION AND CONSENT PROTECTIVE ORDER" (hereinafter "Attorneys' Eyes Only").

3.      All Confidential material including all Attorneys' Eyes Only material shall be used by the receiving party solely for purposes of the prosecution or defense of this action, shall not be used by the receiving party for any business, commercial, competitive, personal or other purpose, and shall not be disclosed by the receiving party to anyone other than those set forth in Paragraphs 4 or 5, unless and until the restrictions herein are removed either by written agreement of counsel for all parties, or by Order of the Court. It is, however, understood that counsel for a party may give advice and opinions to his or her client solely relating to the above-captioned action based on his or her evaluation of Confidential or Attorneys' Eyes Only material, provided that such advice and opinions shall not reveal the content of such Confidential material, except by prior written agreement of counsel for the parties, or by Order of the Court.

4.      Confidential material, and the contents of Confidential material, may be disclosed only to the following individuals under the following conditions:

        a.      Outside counsel (herein defined as any attorney at the parties' outside law firms) and relevant in-house counsel for the parties;

        b.      Outside experts or consultants retained for purposes of this action, provided they have signed a Non-Disclosure Agreement in the form attached hereto as Exhibit A;

        c.      Secretarial, paralegal, clerical, duplicating and data processing personnel of the foregoing;

        d.      The Court and court personnel;

        e.      Any deponent may be shown or examined on any information, document or thing designated Confidential if it appears that the witness authored or received a copy of it, was involved in the subject matter described therein, or is employed by the party who produced the information, document or thing, or if the producing party consents to such disclosure;

        f.      Vendors retained by or for the parties to assist in preparing for pretrial discovery, trial and/or hearings including, but not limited to, court reporters, members of a document review team, litigation support personnel, jury consultants, individuals to prepare demonstrative and audiovisual aids for use in the courtroom or in depositions or mock jury sessions, as well as their staff, stenographic, and clerical employees whose duties and responsibilities require access to such materials, provided the vendor's representative and/or each member of the document review team has signed a Non-Disclosure Agreement in the form attached hereto as Exhibit A, which counsel for the party retaining the vendor(s) shall be obligated to retain and make available to all other parties and/or their counsel upon request; and

        g.     The parties. In the case of parties that are corporations or other business entities, "party" shall mean executives who are required to participate in decisions with reference to this lawsuit.

    5.    Material produced and marked as Attorneys' Eyes Only and the contents of such material may be disclosed only to the following individuals under the following conditions:

        a.     Outside counsel (herein defined as any attorney at the parties' outside law firms) and relevant in-house counsel for the parties;

        b.     Outside experts or consultants retained for purposes of this action, provided they have signed a Non-Disclosure Agreement in the form attached hereto as Exhibit A;

        c.     Secretarial, paralegal, clerical, duplicating and data processing personnel of the foregoing;

        d.     The Court and court personnel;

        e.     Any deponent may be shown or examined on any information, document or thing designated Attorneys' Eyes Only if it appears that the witness authored or received a copy of it, was involved in the subject matter described therein or is employed by the party who produced the information, document or thing, or if the producing party consents to such disclosure;

        f.     Vendors retained by or for the parties to assist in preparing for pretrial discovery, trial and/or hearings including, but not limited to, court reporters, members of a document review team, litigation support personnel, jury consultants, individuals to prepare demonstrative and audiovisual aids for use in the courtroom or in depositions or mock jury sessions, as well as their staff, stenographic, and clerical employees whose duties and responsibilities require access to such materials, provided the vendor's representative and/or each member of the document review team has signed a Non-Disclosure Agreement in the form attached hereto as Exhibit A, which counsel for the party retaining the vendor(s) shall be obligated to retain and make available to all other parties and/or their counsel upon request; and

    6.    With respect to any depositions that involve a disclosure of Confidential material or Attorneys' Eyes Only material of a party to this action, such party receiving the transcript shall notify all counsel by letter or other agreed-upon means upon such receipt and, if practicable, provide a copy thereof, and all other parties shall have until ten (10) days after receipt of the deposition transcript within which to inform all other parties that portions of the transcript are to be designated Confidential and/or for Attorneys' Eyes Only, which period may be extended by agreement of the parties. No such deposition transcript shall be disclosed to any individual other than the individuals described in Paragraphs 4(a), (b), (c), (d) and (f) above and the deponent during these ten (10) days, and no individual attending such a deposition shall disclose the contents of the deposition to any individual other than those described in Paragraphs 4(a), (b), (c), (d) and

(f) above during said ten (10) days. Upon being informed that certain portions of a deposition are to be designated as Confidential and/or for Attorneys' Eyes Only, all parties shall immediately cause each copy of the transcript in its custody or control to be appropriately marked and limit disclosure of that portion of the transcript in accordance with Paragraphs 4 and 5.

7.     If counsel for a party receiving documents or information designated as Confidential or Attorneys' Eyes Only hereunder objects to such designation of any or all of such items, the following procedure shall apply:

     a.     Counsel for the objecting party shall serve on the designating party or third party a written objection to such designation, which shall describe with particularity the documents or information in question and shall state the grounds for objection. Counsel for the designating party or third party shall respond in writing to such objection within ten (10) days after receipt of the objection, and shall state with particularity the grounds for asserting that the document or information is Confidential or Attorneys' Eyes Only. If no timely written response is made to the objection, the challenged designation will be deemed to be void. If the designating party or nonparty makes a timely response to such objection asserting the propriety of the designation, counsel shall then confer in good faith in an effort to resolve the dispute.

     b.     If a dispute as to a Confidential or Attorneys' Eyes Only designation of a document or item of information cannot be resolved by agreement, the proponent of the designation being challenged shall present the dispute to the Court, in accordance with $R$. 4:105-4, before filing a formal motion for an order regarding the challenged designation. The document or information that is the subject of the filing shall be treated as originally designated pending resolution of the dispute.

8.     If the need arises during trial or in any application to/at any hearing before the Court for any party to disclose Confidential or Attorneys' Eyes Only information, it may do so only after giving notice to the producing party, and as directed by the Court.

9.     To the extent consistent with applicable law, the inadvertent or unintentional disclosure of Confidential material or Attorneys' Eyes Only material that should have been designated as such, regardless of whether the information, document or thing was so designated at the time of disclosure, shall not be deemed a waiver in whole or in part of a party's claim of confidentiality, either as to the specific information, document or thing disclosed, or as to any other material or information concerning the same or related subject matter. Within a reasonable time after disclosure such inadvertent or unintentional disclosure may be rectified by notifying, in writing, counsel for all parties to whom the material was disclosed that the material should have been designated Confidential or Attorneys' Eyes Only. Such notice shall constitute a designation of the information, document or thing as Confidential or Attorneys' Eyes Only under this Stipulation and Consent Protective Order.

10.     No information that is in the public domain, or which is already known by the receiving party through proper means, or which is or becomes available to a party from a source other than the party asserting confidentiality, rightfully in possession of such information on a non-confidential basis, shall be deemed or considered to be Confidential material or Attorneys' Eyes Only material under this Stipulation and Consent Protective Order.

11.    This Stipulation and Consent Protective Order shall not deprive any party of its right to object to discovery by any other party or on any otherwise permitted ground. This Stipulation and Consent Protective Order is being entered without prejudice to the right of any party to move the Court for modification or for relief from any of its terms. This Stipulation and Consent Protective Order does not alter the Court Rules and case law regarding the court's obligation to conduct open hearings, or the parties' obligation to file pleadings electronically. The parties further acknowledge that electronic filing system used by the New Jersey Superior Court permits free and open access for the public. Any petition to seal pleadings, documents, records or testimony must be subject to a separate court order.

12.    This Stipulation and Consent Protective Order shall survive the termination of this action and shall remain in full force and effect unless modified by an Order of this Court, or by the written stipulation of the parties filed with the Court.

13.    Upon final conclusion of this litigation, which includes the exhaustion of all appeals and/or expiration of the time within which to file therefor, each party, or other individual subject to the terms hereof, shall be under an obligation to assemble and to return to the originating source all originals and unmarked copies of documents and things containing Confidential material or Attorneys' Eyes Only material and to destroy, should such source so request, all copies of Confidential material or Attorneys' Eyes Only material that contain and/or constitute attorney work product as well as excerpts, summaries and digests revealing Confidential material or Attorneys' Eyes Only material; provided, however, that counsel may retain complete copies of all transcripts and pleadings, including any exhibits attached thereto, for archival purposes, subject to the provisions of this Stipulation and Consent Protective Order. To the extent a party requests the return of Confidential material or Attorneys' Eyes Only material from the Court after the final conclusion of the litigation, including the exhaustion of all appeals therefrom, and all related proceedings, the party shall file a motion seeking such relief.

Dated: April 2, 2019

KRAKOWER DICHIARA LLC

Michael R. DiChiara (NJ ID 010021998)
One Depot Square
77 Market Street, Ste. 2
Park Ridge, New Jersey 07656
Tel: 201-746-6334
Fax: 866-471-2333

*Attorneys for Plaintiff*

FOLEY & LARDNER LLP

Anne B. Sekel (NJ ID 038842005)
90 Park Avenue
New York, New York 10016
Tel: 212-338-3417
Fax: 212-687-2329

*Attorneys for Defendants NTT Data, Inc. and MISICOM Inc.*

page 5 of 8

DRINKER BIDDLE & REATH LLP

_____

Thomas Barton (NJ ID 008211991)
105 College Road E. #300
Princeton, New Jersey 08540
Tel: 609-716-6500
Fax: 609-799-7000

*Attorneys for Defendant Merck & Co. Inc.*

IT IS SO ORDERED.

Dated: April 13TH, 2019

_____
Hon. Alan G. Lesniewich, J.S.C.

**FILED**

**MAY 24 2019**

**HON. ALAN G. LESNEWICH, J.S.C.**

------------------------------------------------------------ X

ROBERT NETHING,

    Plaintiff,

    -against-

MERCK & CO., INC., NTT DATA, INC., and
MISICOM, INC.,

    Defendants.

------------------------------------------------------------ X

**SUPERIOR COURT OF
NEW JERSEY LAW DIVISION:
UNION COUNTY**

DOCKET NO.: UNN-L-003524-17

CIVIL ACTION

**JOINT APPLICATION TO EXTEND
THE DISCOVERY DEADLINE**

## JOINT APPLICATION TO EXTEND THE DISCOVERY DEADLINE

Plaintiff Robert Nething ("Plaintiff"), Defendant Merck & Co, Inc., and Defendants NTT
DATA, Inc. and MISICOM, Inc. (together, "Defendants) under R. 4:24-1(c) respectfully and
jointly apply for a sixty-day extension of the discovery deadline from May 30, 2019 until July 29,
2019 on the following grounds:

While the parties are now working diligently to complete discovery, certain motion practice
and the parties' efforts to resolve the case without further litigation temporarily slowed the
progress of discovery. Therefore, additional time is required to conclude document discovery and
to schedule and take depositions. No trial dates have been fixed in this matter; no prior extension
of the discovery deadline has been sought; and all parties consent to this extension. Thus, there is
good cause to grant this application.

For the reasons set forth herein and upon the consent of all parties, extension of the
discovery deadline is warranted. Accordingly, the parties respectfully and jointly apply to extend
the discovery deadline for sixty days, until July 29, 2019.

Respectfully submitted:

Dated: May 23, 2019

KRAKOWER DICHIARA LLC

/s/ Michael R. DiChiara
Michael R. DiChiara (NJ ID 010021998)
One Depot Square
77 Market Street, Ste. 2
Park Ridge, New Jersey 07656
Tel: 201-746-6334
Fax: 866-471-2333

*Attorneys for Plaintiff*

FOLEY & LARDNER LLP

/s/ Anne B. Sekel
Anne B. Sekel (NJ ID 038842005)
90 Park Avenue
New York, New York 10016
Tel: 212-338-3417
Fax: 212-687-2329

*Attorneys for Defendants NTT Data, Inc. and
MISICOM Inc.*

DRINKER BIDDLE & REATH LLP

/s/ Thomas Barton
Thomas Barton (NJ ID008211991)
105 College Road E. #300
Princeton, New Jersey 08540
Tel: 609-716-6500
Fax: 609-799-7000

*Attorneys for Defendant Merck & Co. Inc.*

IT IS SO ORDERED.

Dated: May 24th, 2019

Hon. Alan G. Lesniewich, J.S.C.

Michael DiChiara, Esq.
DiChiara Law Firm LLC
33 Plymouth Street, Suite 202B,
Montclair, NJ  07042
Telephone: (973) 509-8500
Fax: 866-417-2333
*Attorney for Plaintiff*

FILED

MAY 24TH, 2019

HON. ALAN G. LESNEWICH, J.S.C.

-----------------------------------------------------------x

ROBERT NETHING,

                          Plaintiff,

           -against-

MERCK & CO., INC., NTT DATA, INC., and
MISICOM, INC.

                    Defendants.

-----------------------------------------------------------x

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: UNION COUNTY

DOCKET NO. **UNN-L-03524-17**

**[proposed] ORDER FOR LEAVE TO
FILE SECOND AMENDED
COMPLAINT**

     **THIS MATTER** having been opened to the Court upon the Motion of Plaintiff, for an

Order for Leave to File an Amended Complaint, and opposition having not been filed; and for good cause
shown;

     **IT IS** on this __24th__ day of __May_____, 2019;

     **ORDERED** that Plaintiff's Motion for Leave to File a Second Amended Complaint, is

hereby granted; and it is further,

     **ORDERED** that the Second Amended Complaint will relate back to the date the

original complaint was filed, which was October 3, 2017;

     **ORDERED** that Plaintiff may file the Second Amended Complaint within ten (10) days

of the date of this Order; and it is further

1

A copy of this Order shall be considered served upon all parties by the uploading of the within Order by this Court to eCourts.

_____ Opposed

___X___ Unopposed

*/s/Hon. Alan G. Lesnewich, J.S.C.*

Hon. Alan G. Lesnewich, J.S.C.

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
------------------------------------------------- X
                                                  :
ROBERT NETHING,                                   :
                                                  :
                Plaintiff,                        :        Case No:
                                                  :
        -against-                                 :
                                                  :        CONSENT TO REMOVAL
MERCK & CO., INC., NTT DATA, INC., and            :
MISICOM, INC.,                                    :
                                                  :
                Defendants.                       :
                                                  :
                                                  :
                                                  :
------------------------------------------------- X
```

## DEFENDANTS NTT DATA'S AND MISICOM'S CONSENT TO REMOVAL

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that Defendants NTT DATA, Inc. and MISICOM, Inc. file this consent to removal under 28 U.S.C. § 1446(b).

1. Plaintiff is Robert Nething ("Plaintiff"); Defendants are NTT DATA, Inc. ("NTT DATA"), MISICOM, Inc. ("MISICOM"), and MERCK & CO., Inc. ("MERCK") (collectively, the "Defendants").

2. On or about October 3, 2017, Plaintiff filed a lawsuit alleging state wage and hour claims and state age discrimination claims in the Law Division of Union County for the Superior Division of New Jersey.

3. Defendant NTT DATA was served with the suit on or about November 7, 2017.

4. On February 26, 2018, Plaintiff filed a first amended complaint, adding MISICOM as a defendant and deleting Plaintiff's breach of contract claim.

5.  On May 3, 2019, Plaintiff filed a motion for leave to file a second amended complaint introducing a new cause of action for violations of the Fair Labor Standards Act.

6.  Defendants NTT DATA and MISICOM hereby consent to and agree with the removal of this action to federal court.

Respectfully submitted:

Dated: May 28, 2019                              FOLEY & LARDNER LLP

                                                        s/Anne B. Sekel
                                              Anne B. Sekel (NJ ID 038842005)
                                                        90 Park Avenue
                                              New York, New York 10016
                                                     Tel: 212-338-3417
                                                     Fax: 212-687-2329

                        *Attorney for Defendants NTT DATA, Inc. and MISICOM Inc.*

# EXHIBIT C

Thomas J. Barton (ID No. 008211991)
Thomas.Barton@dbr.com
Andres F. Puerta (ID No. 245222017)
Andres.Puerta@dbr.com
Drinker Biddle & Reath LLP
105 College Road East, Suite 300
P.O. Box 627
Princeton, NJ  08542-0627
(609) 716-6500
(609) 799-7000 (fax)

*Attorneys for Defendant*
*Merck & Co., Inc.*

| | |
|---|---|
| ROBERT NETHING,<br><br>                        Plaintiff,<br><br>v.<br><br>MERCK & CO., INC. AND NTT DATA,<br>INC.,<br><br>                        Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION – CIVIL PART<br>UNION COUNTY<br><br>DOCKET NO.: UNN-L-003524-17<br><br>**NOTICE OF FILING**<br>**OF THE NOTICE OF REMOVAL** |

**TO:**   Clerk, Law Division
         New Jersey Superior Court, Union County
         Union County Courthouse
         2 Broad Street
         Elizabeth, New Jersey 07207

        **PLEASE TAKE NOTICE** that Defendant Merck & Co., Inc. has filed the attached Notice

of Removal (**Exhibit A)** filed in the office of the Clerk of the United States District Court for the

District of New Jersey on May 29, 2019.

                              **DRINKER BIDDLE & REATH LLP**
                              Attorneys for Defendant Merck & Co., Inc.


                              By: */s/ Andres F. Puerta*
                                   ANDRES F. PUERTA

Dated:  May 29, 2019